UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WILLIAM PAPE and NANCY E. PAPE, individually
and as natural guardians of Rebecca Pape, and
REBECCA PAPE,

                     Plaintiffs,

      -v-

THE BOARD OF EDUCATION OF THE
WAPPINGERS CENTRAL SCHOOL
DISTRICT and RICHARD A. POWELL, individually
and as Superintendent of the Wappingers Central
School District,

                     Defendants.

Case No. 07-CV-8828 (KMK)

OPINION AND ORDER

Appearances:

Ben M. Arai, Esq.
Bronx, New York
*Counsel for Plaintiffs*

Neelanjan Choudhury, Esq.
Donoghue, Thomas, Auslander & Drohan, LLP
Hopewell Junction, New York
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

      Plaintiff Rebecca Pape ("Rebecca") and her parents, Plaintiffs William and Nancy E.

Pape (the "Papes") (collectively, "Plaintiffs") bring this civil rights action against Defendant

Board of Education of the Wappingers Central School District (the "District" or the "Board")

and Defendant Richard A. Powell ("Powell"), individually and in his official capacity as

Superintendent of the Wappingers Central School District (collectively, "Defendants").

Plaintiffs bring this action under Section 504 of the Rehabilitation Act of 1973 ("Section 504"),

29 U.S.C. § 794; Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et*

*seq.*; and 42 U.S.C. § 1983 ("Section 1983"), claiming violations of the Due Process and Equal

Protection Clauses of the Fourteenth Amendment.  Defendants move to dismiss Plaintiffs' Second Amended Complaint.  For the reasons stated herein, Defendants' motion is granted in part and denied in part.

## I.  Background

### A.  Factual Background

For purposes of deciding Defendants' motion, the Court accepts as true the allegations contained in Plaintiffs' Second Amended Complaint, described below, and construes them in the light most favorable to Plaintiffs.

Rebecca, a former student of the District, qualified as disabled under Section 504 and the ADA "'as [a] student with Emotional Disturbance,'" which impaired her ability to attend a regular school program.  (Second Am. Compl. ("SAC") ¶ 34.)

Plaintiffs reside in the District, which is a local public agency serving Wappingers Falls, New York (*id.* ¶¶ 8-9), and which receives federal financial assistance (*id.* ¶¶ 8-10).  Defendant Powell was appointed Superintendent on May 21, 2001 (*id.* ¶ 16) and was the Superintendent of the District while Rebecca was a student of the District, and during all time periods relevant to Plaintiffs' Second Amended Complaint (*id.*).  According to Plaintiffs, the Board's official policy stated that, as Superintendent, Powell was responsible for "'the execution, administration and enforcement of all policies of the district.'"  (*Id.* ¶ 13.)  He was also authorized "'to report to and be accountable to the Board . . . and not any officer, committee or individual member of the Board in fulfilling his responsibilities.'"  (*Id.*)

In June 2003, when Rebecca was nineteen years old, the District graduated her from her then-pendent placement in the Summit School, a private residential school for emotionally disturbed students.  (*Id.* ¶ 17; Pls.' Mem. in Opp'n to Defs.' Rule 12(b)(6) Mot. to Dismiss

("Opp'n") 6.)  At that time, the District also stopped funding the special education program in which Rebecca was enrolled.  (SAC ¶¶ 17, 39.)  Defendants directed Plaintiffs to the State Education Department's Office of Vocational and Educational Services for Individuals with Disabilities ("VESID").  (*Id.* ¶ 41.)

Plaintiffs claim that the District and Powell took these actions in retaliation for the numerous proceedings Plaintiffs previously initiated under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400 *et seq.*, against the District due to its alleged failure to adequately address Rebecca's emotional disability since 1998.[1]  (*Id.* ¶ 18.)  For example, in

---

[1] Under the IDEA, states receiving federal funds are required to provide "[a] free appropriate public education . . . to all children with disabilities residing in the State between the ages of 3 and 21."  20 U.S.C. § 1412(a)(1)(A); *see also Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 181-82 (1982).  To meet this requirement, school districts must provide "'special education and related services' tailored to meet the unique needs of a particular child, . . . [which are] 'reasonably calculated to enable the child to receive educational benefits.'"  *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 122 (2d Cir. 1998) (quoting *Rowley*, 458 U.S. at 207) (internal citation omitted).  These services must be provided in accordance with an Individualized Education Program ("IEP") that is set in place at the start of each school year.  *See* 20 U.S.C. § 1414(d).

If a parent disagrees with an IEP prepared by a school district, the parent may challenge the IEP by requesting an "impartial due process hearing."  *Id.* § 1415(f).  In New York State, an Impartial Hearing Officer ("IHO"), who is appointed by the local board of education, presides over the hearing.  *See* N.Y. Educ. Law § 4404(1)(a).  The IHO must "render a decision . . . not later than forty-five days from the date required for commencement of the impartial hearing."  N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(j)(5) (2009).  The resulting IHO decision may be appealed to a State Review Officer ("SRO").  *See* N.Y. Educ. Law § 4404(1)(c); 20 U.S.C. § 1415(g)(1) ("If the hearing required by subsection (f) of this section is conducted by a local educational agency, any party aggrieved by the findings and decision rendered in such a hearing may appeal such findings and decision to the State educational agency.").  "These two levels of review must be exhausted before an aggrieved party may commence an action in federal court."  *McAdams v. Bd. of Educ. of Rocky Point Union Free Sch. Dist.*, 216 F. Supp. 2d 86, 93 (E.D.N.Y. 2002) (citing 20 U.S.C. § 1415(i)(2)(A)).  In addition, the IDEA's stay-put provision requires that "the child . . . remain in the then-current educational placement" during the pendency of these proceedings, "unless the State or local educational agency and the parents otherwise agree."  20 U.S.C. § 1415(j); *see also Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199 (2d Cir. 2002) ("Section 1415(j) establishes a student's right to a stable learning environment during what may be a lengthy administrative and judicial review.").

January 2000, the Papes requested a due process hearing on the basis that the District allegedly

denied Rebecca a free appropriate public education ("FAPE").  (*Id.* ¶ 19.)  In October 2002, an

impartial hearing officer ("IHO") granted the Papes' challenge.  (*Id.*)  In addition, from 2000 to

2003, the Papes prevailed against the District in two separate due process hearings before an

IHO regarding the District's accommodation of Rebecca's educational needs.  (*Id.* ¶ 20.)

Plaintiffs allege that "[t]he disgrace of losing hearings to [P]laintiffs provided a strong motive for

[D]efendants to retaliate against [P]laintiffs; otherwise, it does not make any sense for [Powell]

to flout the clearly established procedural guarantees of [Section] 1415 of the IDEA."  (*Id.*)

On March 27, 2003, the Papes requested a due process hearing seeking a psychiatric

evaluation, full participation in Committee on Special Education ("CSE") meetings, a transition

plan, and medical expenses connected with Rebecca's attendance at the Summit School.  (*Id.*

¶ 14; Letter from Neelanjan Choudhury, Esq. to the Court (Aug. 5, 2009), Attach. 1 (*In the*

*Matter of Parent & Guardian of R.P. v. Wappingers Cent. Sch. Dist.*, Order (Lazan, M., IHO)

(Oct. 12, 2004) ("October 12, 2004 IHO Order") 1).)

Plaintiffs allege that Defendants purposefully did not respond to Plaintiffs' March 27,

2003 request for a due process hearing, failed to appoint an IHO in a timely manner, failed to

commence a timely hearing, and did not render a decision within forty-five days of the hearing

as required by law.[2]  (SAC ¶¶ 35-37.)  In addition, Plaintiffs claim that the District violated the

IDEA's stay-put provision by unilaterally graduating Rebecca before she turned twenty-one.  (*Id.*

¶ 42.)

---

[2] However, the October 12, 2004 IHO Order noted that "[t]he matter was extended
numerous times with the consent of the parties and the [IHO] and without a showing of prejudice
to the student.  Record close date was set, after extensions due to decision-writing, at September
28, 2004.  Delays were occasioned from March[] 2003 through October[] 2003 due to the fact
that [IHO] Tyk was originally assigned to this matter."  (October 12, 2004 IHO Order 10 n.1.)

On December 30, 2003, an IHO commenced a due process hearing pursuant to Plaintiffs'
March 27 request.  (*Id.* ¶ 25.)  On October 12, 2004, the IHO issued an order (the "October 12,
2004 IHO Order"), finding that the District failed to provide Rebecca with necessary
psychological and vocational counseling, psychiatric evaluations, and transitional services
(collectively, the "Transitional Services") to prepare her to be self-sufficient and to provide her
with the independent life skills necessary for college.[3]  (*Id.* ¶ 27.)  The IHO ordered the District
to hold a CSE review meeting to create a new transition plan, but held that creation and
implementation of the transition plan was dependent on Rebecca's attendance at the CSE
meeting.  (October 12, 2004 IHO Order 13-14.)  The IHO stated that if Rebecca attended the
CSE meeting, a psychiatric evaluation should be part of the transition plan.  (*Id.* 13.)  The IHO
noted that, following the CSE review meeting, a new IEP should be created and the prior IEP
would be void.  (*Id.* 13-14.)  The IHO further held that Plaintiffs were not entitled to medical
costs incurred at the Summit School.  (*Id.* 14.)  Finally, the IHO suggested that District should
"thoughtfully consider the need to provide [Rebecca] with counseling, a psychiatric evaluation, a
vocational assessment, a job option[], [and] college options.  If such options are deemed
appropriate, a clear and well-reasoned plan to deliver such options shall be written and
distributed to the parties."  (*Id.*)

Plaintiffs allege that Defendants have not implemented the October 12, 2004 IHO Order
and unlawfully attempted to shift the burden of paying for the Transitional Services to Plaintiffs
by requiring them to pay VESID, which they were unable to do.  (SAC ¶ 45.)  Plaintiffs claim

---

[3] Transitional services are defined as "a coordinated set of activities for a student,
designed with an outcome-oriented process that promotes movement from school to post-school
activities, including post-secondary education, vocational training, integrated employment
(including supported employment), continuing and adult education, adult services, independent
living, or community participation."  (October 12, 2004 IHO Order 11.)

that, without the Transitional Services, Rebecca lacked the skills necessary to succeed in college and the workplace. (*Id.* ¶¶ 47-48.) Rebecca left college after attending classes for only three weeks. (*Id.* ¶ 47.) She is currently twenty-four years old and can only hold a part-time job. (*Id.* ¶¶ 29, 48.)

In early November 2006, Plaintiffs appealed to the SRO seeking enforcement of the October 12, 2004 IHO Order.[4] (*Id.* ¶ 30.) On December 8, 2006, the SRO denied Plaintiffs' appeal, holding that "enforcement of an [IHO's] order can properly be sought by filing an administrative complaint with [VESID] pursuant to applicable federal and state regulations, or in federal court under [Section 1983]." (SRO Order 2 (internal citations omitted).) The SRO noted that the IHO "lacks an enforcement mechanism" and that "because the October 12, 2004 [IHO Order] . . . was favorable to [Plaintiffs], [Plaintiffs] need not exhaust administrative remedies prior to bringing an action in court." (*Id.*)

B. Procedural History

On October 12, 2007, Plaintiffs filed their original Complaint in the Southern District of New York against: the District; Joseph Corrigan ("Corrigan"), individually and as Assistant Superintendent for Administration of the District; and Richard P. Mills ("Mills"), individually and as Commissioner of the New York State Education Department. On February 7, 2008, Plaintiffs filed an Amended Complaint removing Mills as a defendant and adding Wayne Gersen ("Gersen"), individually and as Superintendent of the District. The case was reassigned to this

---

[4] Prior to appealing to the SRO, Plaintiffs first requested that an IHO review the October 12, 2004 IHO Order, but this request was dismissed by the IHO on October 15, 2006. (Letter from Neelanjan Choudhury, Esq. to the Court (Aug. 5, 2009), Attach. 2 (App. of Child with a Disability, by her parents, for review of a determination of a hearing officer relating to the provision of educational services by the Board of Education of the Wappingers Central School District, No. 06-130, Decision (Kelly, P., SRO) (Dec. 8, 2006) ("SRO Order") 1).)

Court from Judge Harold Baer on February 27, 2008.[5]  (Dkt. No. 8.)  Defendants answered

Plaintiffs' Amended Complaint and filed a Counterclaim against Plaintiffs on March 31, 2008.[6]

(Dkt. No. 13.)  Plaintiffs answered the Counterclaim on April 23, 2008.  (Dkt. No. 16.)

At a pre-motion conference held on May 22, 2008, the Court granted Plaintiffs leave to

file a Second Amended Complaint, which they did on June 30, 2008.  Plaintiffs' Second

Amended Complaint, which for the first time added Powell as a defendant, and removed

Corrigan and Gersen as defendants, seeks compensatory damages under Section 504, the ADA,

and Section 1983.  (SAC ¶ 2.)  Plaintiffs are suing Powell in his official and individual capacities

for compensatory damages under Section 1983 for alleged violation of their due process and

equal protection rights.  Additionally, Plaintiffs seek punitive damages against Powell

individually for allegedly ignoring the procedural guarantees of Section 1415.[7]  (*Id.*; Opp'n 3.)

On November 13, 2008, Defendants filed the instant motion, seeking to dismiss

Plaintiffs' claims pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.  Specifically,

Defendants seek (1) dismissal of Plaintiffs' equal protection claims; (2) dismissal of Plaintiffs'

claims that accrued prior to October 12, 2004, as barred by the applicable statute of limitations;

and (3) dismissal of Plaintiffs' claims against Powell.  Oral argument was held on August 4,

2009.

---

[5] Defendants requested that the matter be transferred to this Court pursuant to Southern District of New York Local Civil Rule 21(a)(ii), because the causes of action underlying Plaintiffs' Amended Complaint arose in Dutchess County and both Plaintiffs and Defendants are residents of Dutchess County.

[6] On March 3, 2008, the Court granted Defendants' request for an extension of time to file an answer.  (Dkt. No. 9.)

[7] Plaintiffs concede that they are not alleging claims against Powell individually for violations of Section 504 and the ADA, and that they are not seeking punitive damages against Defendants under Section 504 and the ADA.  (Opp'n 7-8.)

## II.  Discussion

### A.  Standard of Review

"On a Rule 12(b)(6) motion to dismiss a complaint, the court must accept a plaintiff's

factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor."  *Gonzalez*

*v. Caballero*, 572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008); *see also Ruotolo v. City of New York*,

514 F.3d 184, 188 (2d Cir. 2008) ("We review *de novo* a district court's dismissal of a complaint

pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint and drawing all

reasonable inferences in the plaintiff's favor." (internal quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its

consideration to facts stated on the face of the complaint, in documents appended to the

complaint or incorporated in the complaint by reference, and to matters of which judicial notice

may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal

quotation marks omitted).  Moreover, "it is well-established that the court may consider a

document, even if not attached or incorporated by reference, where the complaint 'relies heavily

upon its terms and effect,' thus rendering the document 'integral' to the complaint."  *Munno v.*

*Town of Orangetown*, 391 F. Supp. 2d 263, 268 (S.D.N.Y. 2005) (quoting *Chambers v. Time*

*Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)); *see also Combier v. Biegelson*, No. 03-CV-

10304, 2005 WL 477628, at *1 (S.D.N.Y. Feb. 28, 2005) (considering IHO and SRO orders in

deciding a motion to dismiss an IDEA claim, and noting that plaintiff "had knowledge and relied

on [them] in bringing the action"); *Thomas v. Westchester County Health Care Corp.*, 232 F.

Supp. 2d 273, 276 (S.D.N.Y. 2002) (considering IHO order, which was attached to defendants'

motion to dismiss, because the document was "integral" to plaintiff's discrimination claims).

Accordingly, "'[w]here plaintiff has actual notice . . . and has relied upon these documents in

8

framing the complaint,' the court may consider the documents without converting the Rule 12(b)(6) motion into a motion under Rule 56." *Munno*, 391 F. Supp. 2d at 268 (quoting *Chambers*, 282 F.3d at 153) (alteration in *Munno*).

In addition, "[t]he court may also consider matters of which judicial notice may be taken, even if the corresponding documents are not attached to or incorporated by reference in the complaint." *Id.* In particular, the court "may take judicial notice of public records." *Id.*; *see also Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (holding that, on motion to dismiss, district court properly took judicial notice of public documents filed with SEC); *Thomas*, 232 F. Supp. 2d at 276 ("[T]he Court may take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment." (internal quotation marks omitted)).

Here, the October 12, 2004 IHO Order and December 8, 2006 SRO Order were referenced throughout Plaintiff's Second Amended Complaint and, moreover, are "integral" to Plaintiffs' claim for enforcement of the October 12, 2004 IHO Order. Additionally, at the August 4, 2009 oral argument, all Parties agreed that the Court should consider the October 12, 2004 IHO Order and December 8, 2006 SRO Order in deciding the instant motion and noted that these documents are available to the public. Accordingly, the Court finds that "review of . . . the decision of the [IHO] and the decision of the [SRO] is also appropriate" in deciding Defendants' motion to dismiss. *Combier*, 2005 WL 477628, at *1.

The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted) (second alteration in *Twombly*).

Instead, the Court has emphasized that "[f]actual allegations must be enough to raise a right to

relief above the speculative level," *id*., and that "once a claim has been stated adequately, it may

be supported by showing any set of facts consistent with the allegations in the complaint," *id*. at

563.  Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face."

*Id*. at 570.  If Plaintiffs "have not nudged their claims across the line from conceivable to

plausible, their complaint must be dismissed."  *Id*.; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937,

1950 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a

context-specific task that requires the reviewing court to draw on its judicial experience and

common sense.  But where the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the

pleader is entitled to relief.'" (internal citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))

(alteration in original)).

    B.  Plaintiffs' Equal Protection Claims

      Plaintiffs' Second Amended Complaint alleges that Defendants violated Rebecca's rights

under the Equal Protection Clause of the Fourteenth Amendment.  Plaintiffs bring this claim

under Section 1983.  Specifically, Plaintiffs allege that the District's actions against Plaintiffs

were "based on . . . [D]efendants' discriminatory animus against Rebecca for her emotional

disturbance" (SAC ¶ 50) and that Defendants "discriminated against . . . [P]laintiffs by

retaliating against them" (*id.* ¶ 17).[8]  In addition, Plaintiffs argue that "[Powell] should have

known that disregarding . . . [P]laintiffs' due process rights in such a blatant manner would

constitute discrimination against a qualified disabled student such as Rebecca."  (*Id.* ¶ 22.)

---

    [8] Plaintiffs have not brought a retaliation claim under the First Amendment.

Defendants contend that Plaintiffs' equal protection claims should be dismissed because there are no allegations that Rebecca belongs to a protected class or that she was treated differently from non-disabled students, let alone other disabled students.  (Mem. of Law in Supp. of Defs.' Mot. to Dismiss ("Defs.' Mem.") 5.)

The Fourteenth Amendment provides, in relevant part, that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  The Equal Protection Clause is "essentially a direction that all persons similarly situated be treated alike."  *Latrieste Rest. v. Vill. of Port Chester*, 188 F.3d 65, 69 (2d Cir. 1999) (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)).  The general rule in Equal Protection Clause jurisprudence is that state legislation or other official action is "presumed to be valid and will be sustained" so long as the classification drawn by the legislation or official action "is rationally related to a legitimate state interest."  *City of Cleburne*, 473 U.S. at 440.  "The general rule gives way, however," when the official action classifies by "race, alienage, or national origin," and is "subjected to strict scrutiny and will be sustained only if [it is] suitably tailored to serve a compelling state interest."  *Id.*  In addition, "a gender classification," which is a quasi-suspect classification, "call[s] for a heightened standard of review" and "fails unless it is substantially related to a sufficiently important governmental interest."  *Id.* at 440-41.

The Supreme Court has held, however, that individuals with disabilities do not qualify as a suspect or "quasi-suspect classification calling for a more exacting standard of judicial review than is normally accorded" official actions, *id.* at 442, 446; *accord Suffolk Parents of Handicapped Adults v. Wingate*, 101 F.3d 818, 824 n.4 (2d Cir. 1996) (refusing to treat severely handicapped adults "as a 'protected class' for purposes of equal protection analysis").  Of course,

the fact that the mentally disabled do not qualify "as a [suspect or] quasi-suspect class does not leave them entirely unprotected from invidious discrimination." *City of Cleburne*, 473 U.S. at 446. "To withstand equal protection review," state action "that distinguishes between the mentally [disabled] and others must be rationally related to a legitimate governmental purpose." *Id.*

Plaintiffs have failed to show that Rebecca is a member of a protected class, and their allegations do not identify any official action that distinguished between disabled students and others, or conduct that is not rationally related to a legitimate governmental purpose. The broad discriminatory claims alleged by Plaintiffs are, at best, "the type of alleged discrimination that [Section 504] and the ADA are designed to protect against, not the Equal Protection Clause." *Essen v. Bd. of Educ. of Ithaca City Sch. Dist.*, No. 92-CV-1164, 1996 WL 191948, at *9 (N.D.N.Y. Apr. 15, 1996). Indeed, courts have held that the denial of equal access to public education for disabled students is precisely the type of alleged discrimination protected by statutory authority under the IDEA, Section 504, and the ADA. *See Lillbask v. Sergi*, 117 F. Supp. 2d 182, 196 (D. Conn. 2000) ("The IDEA ensures the protection of the rights of disabled children requiring special education"). Accordingly, courts have found that disabled students who are "denied equal access to public education" should seek relief under those statutes. *Essen*, 1996 WL 191948, at *9. Thus, absent more specific claims that Defendants engaged in invidious discrimination against Rebecca because of her disability, beyond just a general claim that Defendants failed to provide her with a FAPE, Plaintiffs have failed to state an equal protection claim. *See id.* ("[A]bsent a showing that the District's policies served to discriminate against a particular class of disabled students, no equal protection cause of action exists.").

Plaintiffs also appear to be claiming that Rebecca was unfairly singled out by Defendants

in violation of the Equal Protection Clause.  The Supreme Court has recognized "class of one"

claims "where the plaintiff alleges that she has been intentionally treated differently from others

similarly situated and that there is no rational basis for the difference in treatment."  *Vill. of*

*Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam); *see also Giordano v. City of New*

*York*, 274 F.3d 740, 750-51 (2d Cir. 2001).  Such a claim "requires a showing that the level of

similarity between the plaintiff and the person(s) with whom she compares herself is extremely

high – so high (1) that no rational person could regard the circumstances of the plaintiff to differ

from those of a comparator to a degree that would justify the differential treatment on the basis

of a legitimate government policy, and (2) that the similarity in circumstances and difference in

treatment are sufficient to exclude the possibility that the defendant acted on the basis of a

mistake.  The plaintiff must also show that the defendant intentionally treated her differently,

with no rational basis."  *Rafano v. Patchogue-Medford Sch. Dist.*, No. 06-CV-5367, 2009 WL

789440, at \*5 (E.D.N.Y. Mar. 20, 2009) (internal quotation marks omitted); *see also Clubside,*

*Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006).

      Plaintiffs' class-of-one claim fails because they have not alleged that others similarly

situated were treated differently from Plaintiffs.  Indeed, as Plaintiffs' counsel conceded at oral

argument, Plaintiffs have not identified any "similarly situated" person in their Second Amended

Complaint who was treated differently from Plaintiffs.  Thus, the Court must dismiss this cause

of action.  *See Bikur Cholim, Inc. v. Vill. of Suffern*, Nos. 05-CV-10759, 06-CV-7713, 2009 WL

1810136, at \*8-9 (S.D.N.Y. June 25, 2009) (dismissing equal protection class-of-one claim

because "plaintiffs have made no allegations of similarly situated property owners . . . . [and

w]ithout any comparators . . . plaintiffs' claim under the Equal Protection Clause cannot stand");

*Talley v. Brentwood Union Free Sch. Dist.*, No. 08-CV-790, 2009 WL 1797627, at \*8 (E.D.N.Y.

June 24, 2009) (dismissing plaintiff's class of one equal protection claim because "the absence

of factual allegations of any similarly situated individual is fatal to [the] claim"); *Econ.*

*Opportunity Comm'n of Nassau County v. County of Nassau, Inc.*, 47 F. Supp. 2d 353, 370

(E.D.N.Y. 1999) (dismissing equal protection claims because plaintiffs did not allege "similarly

situated entities which were treated differently from the plaintiffs").  Accordingly, Defendants'

motion to dismiss Plaintiffs' equal protection claim is granted.

C.  Plaintiffs' Claims That Accrued Prior to October 12, 2004

Plaintiffs initiated this lawsuit on October 12, 2007.  Defendants assert that Plaintiffs'

claims for relief based on events prior to October 12, 2004 are time-barred, arguing that the

applicable statute of limitations is three years.[9]  (Defs.' Mem. 8-9.)  Plaintiffs argue that

Defendants' failures to comply with the procedural safeguards under Section 1415 caused

Plaintiffs "extreme prejudice."  (Opp'n 8.)  Additionally, Plaintiffs claim to have missed filing

deadlines because they were not advised of these deadlines by Defendants.  (*Id.*)  Plaintiffs claim

that the applicable statute of limitations should therefore be equitably tolled.

Plaintiffs' claims under Section 504, the ADA, and Section 1983 arise from Defendants'

---

[9] In their Memorandum of Law, Defendants alternatively argued that Plaintiffs' claims that accrued prior to October 12, 2004 are barred by Plaintiffs' failure to exhaust their administrative remedies.  (Defs.' Mem. 8.)  At oral argument, Defendants conceded that Plaintiffs' claims for enforcement of the October 12, 2004 IHO Order and their claims based on the subject matter of the October 12, 2004 IHO Order, such as the provision of Transitional Services, are administratively exhausted.  But Defendants contend that even if the Court were to find that Plaintiffs' claims that accrued prior to October 12, 2004 were timely, these claims are barred because Plaintiffs failed to allege that these violations were addressed by the October 12, 2004 IHO Order or otherwise administratively exhausted.  *See Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 245 n.2 (2d Cir. 2008) (noting that "the IDEA's exhaustion requirement applies equally to relief available under . . . the ADA, Section 520, and § 1983"); *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 487 (2d Cir. 2002) ("[P]laintiffs [are] not permitted to evade the IDEA's exhaustion requirement merely by tacking on a request for money damages.").  Because the Court holds that these claims are time-barred, it need not reach Defendants' alternative argument.

alleged procedural due process violations, alleged noncompliance with the IDEA, and alleged

retaliatory and discriminatory acts against Plaintiffs.  Plaintiffs claim that Defendants "retaliated

against . . . [P]laintiffs by unilaterally graduating Rebecca from her then[-]pendent placement at

Summit School, and by cutting off funding for her special education program immediately after

graduating [her] from Summit School."  (SAC ¶ 17.)  Plaintiffs also allege that Defendants

violated their procedural due process rights by exceeding the IDEA's mandatory forty-five day

deadline for rendering a decision in Rebecca's hearing and by denying Rebecca reasonable

accommodation and meaningful access to the District's special education program.  (*Id.* ¶¶ 35,

46.)  Plaintiffs further claim to have brought these claims in federal court, in part, to enforce the

October 12, 2004 IHO Order, which they successfully appealed to the SRO in December 2006,

thus making the claims timely.  (*Id.* ¶¶ 30-32.)

        If a federal statute does not provide a limitations period, which is the case for all of

Plaintiffs' claims in this action, the applicable limitations period is borrowed from the forum

state statute of limitations.  *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 158 (1983)

(noting that when "there is no federal statute of limitations expressly applicable . . . [the Supreme

Court has] generally concluded that Congress intended that the courts apply the most closely

analogous statute of limitations under state law"); *Curto v. Edmundson*, 392 F.3d 502, 504 (2d

Cir. 2004) (applying "the most appropriate or analogous state statute of limitations" to federal

civil rights statute that did not provide a limitations period (internal quotation marks omitted)).

Here, as the Parties agree, New York's three-year statute of limitations applicable to personal

injury actions is the most analogous state statute of limitations for claims brought under Section

504, the ADA, and Section 1983.  *See Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir.

2002) ("In section 1983 actions, the applicable limitations period is found in the 'general or

residual [state] statute [of limitations] for personal injury actions . . . .'" (quoting *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)) (alterations in original)); *Duprey v. Conn. Dep't of Motor Vehicles*, 191 F.R.D. 329, 341 (D. Conn. 2000) ("Because causes of action under Title II of the ADA and section 504 of the Rehabilitation Act are essentially identical, we find that the same statute of limitations would apply to both."). In addition, as the Parties acknowledge, the statute of limitations for Defendants' alleged IDEA violations also is three years. *See S.W. v. Warren*, 528 F. Supp. 2d 282, 301 (S.D.N.Y. 2007) (applying a three-year statute of limitations in an IDEA case).

"Federal law governs the question of when a federal claim accrues notwithstanding that a state statute of limitations is to be used." *Morse v. Univ. of Vt.*, 973 F.2d 122, 125 (2d Cir. 1992). Thus, under federal law, "each [of Plaintiffs' federal claims] would accrue at the same time: when [Plaintiffs] knew or had reason to know of the injury serving as the basis for [their] claim," *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999); *see also Morse*, 973 F.2d at 125 ("Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action." (internal quotation marks omitted)). "The reference to 'knowledge of the injury' does not suggest that the statute does not begin to run until the claimant has received judicial verification that the defendants' acts were wrongful." *Veal v. Geraci*, 23 F.3d 722, 724 (2d Cir. 1994) (brackets omitted). "Rather, the claim accrues when the alleged conduct has caused the claimant harm and the claimant knows or has reason to know of the allegedly impermissible conduct and the resulting harm." *Id.*

Thus, in analyzing Plaintiffs' Section 504, ADA, and Section 1983 claims, the Court measures timeliness from the date Plaintiff received notice of Defendants' allegedly adverse actions. *See Morse*, 973 F.2d at 125 ("[T]he proper focus is on the time of the *discriminatory*

*act*, not the point at which the *consequences* of the act become painful." (internal quotation marks omitted) (emphasis in original)); *Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1037 (2d Cir. 1993) ("[T]he timeliness of a discrimination claim is measured from the date the claimant receives notice of the allegedly discriminatory decision." (quoting *O'Malley v. GTE Serv. Corp.*, 758 F.2d 818, 820 (2d Cir. 1985))); *Chittenden v. Connors*, 460 F. Supp. 2d 463, 466 (S.D.N.Y. 2006) (holding that plaintiff's Section 1983 retaliation claim accrued when he was advised of the disciplinary charges brought against him, rather than when he was effectively served with them); *Essen*, 1996 WL 191948, at *7 ("[A] three year statute of limitations applies to [a Section 504] claim.  This three year period accrues when a plaintiff knows or has reason to know of the discriminatory acts that are the basis for his or her claim.").  Similarly, "[a]n IDEA claim accrues on the date that a plaintiff or [her] parent 'knew or should have known about the alleged action that forms the basis of the complaint.'"  *Somoza v. N.Y. City Dep't of Educ.*, 538 F.3d 106, 114 (2d Cir. 2008) (quoting 20 U.S.C. § 1415(b)(6)(B)); *see also Scaggs v. N.Y. Dep't of Educ.*, No. 06-CV-799, 2007 WL 1456221, at *10 (E.D.N.Y. May 16, 2007) (noting that, within the Second Circuit, the statute of limitations on IDEA-related claims "begins to run at the time that a plaintiff learns or has reason to learn of the injuries that form the basis for his claim").  Therefore, "[b]ecause the original complaint was filed on [October 12, 2007], only claims which arose since [October 12, 2004] are timely," *Sweeney v. City of New York*, No. 03-CV-4410, 2004 WL 744198, at *2 (S.D.N.Y. Apr. 2, 2004); *see also Scaggs*, 2007 WL 1456221, at *10 (holding plaintiffs' Section 504, ADA, and Section 1983 claims time-barred where those claims arose under the IDEA and were based on acts taken by defendants more than three years before the complaint was filed).

Plaintiffs allege that they learned about the basis for their due process claims when they

learned of Defendants' unilateral graduation of Rebecca and simultaneous termination of her special education funds in June 2003. Thus, based on Plaintiffs' own allegations, Plaintiffs' due process claims first accrued at the latest in June 2003 and thus expired three years later in June 2006. In addition, Plaintiffs cannot contend that these claims were incorporated into the October 12, 2004 IHO Order because the hearing request that precipitated the October 12, 2004 IHO Order, Plaintiffs' March 27, 2003 request, pre-dated the unilateral graduation and special education termination and, in fact, was based on a "request for a psychiatric evaluation, full participation in [CSE] meetings, a transition plan, and medical expenses connected to attendance at Summit School." (October 12, 2004 IHO Order 1.) Indeed, there is no allegation that Plaintiffs ever requested an IHO hearing to address the unilateral graduation and special education termination claims.[10]

Plaintiffs argue that their due process claims based on Defendants' alleged adverse actions that accrued before October 12, 2004 should be equitably tolled because they were "extreme[ly] prejudiced" by Defendants' conduct and because it is Defendants' fault that Plaintiffs missed filing deadlines. (Opp'n 8.) The Second Circuit has held that it "will apply the equitable tolling doctrine 'as a matter of fairness' where a plaintiff has been 'prevented in some extraordinary way from exercising his rights,'" and "where a plaintiff 'could show that it would have been *impossible* for a reasonably prudent person to learn' about his or her cause of action." *Pearl*, 296 F.3d at 85 (quoting *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 24 (2d Cir. 1985)).[11]

---

[10] To the extent that Plaintiffs are alleging that Defendants discriminated against them by violating the forty-five day requirement to resolve a request for an IHO hearing, this claim is also time-barred. In addition, the Court notes that the October 12, 2004 IHO Order states that Plaintiffs "consent[ed]" to the extension of the matter from March 2003 through its resolution in October 2004. (October 12, 2004 IHO Order 10 n.1.)

[11] An example of impossibility not claimed here is where the plaintiff's failure to comply with the appropriate deadline is attributable to a medical condition. *See Brown v. Parkchester S.*

Plaintiffs argue that they were "extreme[ly] prejudiced" by Defendants' unilateral graduation of Rebecca and termination of special education funding.  (Opp'n 8.)  Even if this is true, it does not change the analysis.  First, Plaintiffs offer no reason to believe it was virtually impossible to bring this action earlier.  Nor do they allege any conduct by Defendants that prevented them from doing so.  *See Zerilli-Edelglass v. N.Y. City Transit Auth.*, 333 F.3d 74, 80 (2d. Cir. 2003) (noting that equitable tolling is appropriate "where plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant").  Second, it is noteworthy that, in spite of this "extreme prejudice," Plaintiffs never requested an IHO review of Defendants' actions.  Moreover, Plaintiffs are not entitled to equitable tolling during the period in which they sought enforcement of the October 12, 2004 IHO Order through the IHO and SRO process.  As noted above, the October 12, 2004 IHO Order did not address Plaintiffs' due process claims related to Rebecca's unilateral graduation or termination of special education funding, and Plaintiffs' enforcement efforts at the administrative level were focused on the implementation of the October 12, 2004 IHO Order, namely, the provision of Transitional Services to Rebecca.  Further, equitable tolling for claims based on retaliatory and discriminatory conduct is not available merely because the plaintiff pursues a collateral grievance procedure.  *See Del. State Coll. v. Ricks*, 449 U.S. 250, 261 (1980) (holding that plaintiff's pursuit of relief through grievance procedure within college did not toll plaintiff's claim, which was based on the denial of tenure); *Burns v. Cook*, 458 F. Supp. 2d 29, 43-44 (N.D.N.Y. 2006) ("The commencement of grievance procedures by the employee after receiving . . . notice [of the discriminatory act] does not toll the limitation period.").  Here, Plaintiffs have

---

*Condos.*, 287 F.3d 58, 60 (2d Cir. 2002); *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000).

not demonstrated the extreme circumstances required for the application of equitable tolling. Accordingly, the Court finds that equitable tolling is not available for Plaintiffs' due process claims that accrued prior to October 12, 2004.[12]

However, to the extent that Plaintiffs allege that Defendants violated their due process rights by continuing to violate the October 12, 2004 IHO Order and failing to provide Rebecca with the Transitional Services, these claims survive. *See Scaggs*, 2007 WL 1456221, at *10 (noting that although the continuing wrong doctrine did not save plaintiffs' claims prior to three years before the filing date, plaintiffs' claims regarding defendants' post-limitations conduct, including the alleged failure to prepare and provide IEPs, as well as the failure to provide requisite educational services, were not time-barred).  Accordingly, Plaintiffs' claims seeking enforcement of the October 12, 2004 IHO Order, and any of Plaintiffs' claims regarding unlawful conduct that accrued after October 12, 2004, are timely.

---

[12] Although not argued by Plaintiffs, the Court has also considered whether Plaintiffs' claims are timely under the theory that Defendants' alleged violations constitute "continuing violations" that began in June 2003 and continue to the present day. *See Scaggs*, 2007 WL 1456221, at *10.  However, "[i]n this Circuit, the continuing-violation doctrine is 'disfavored' and 'is applied only upon a showing of compelling circumstances.'" *Id.* (quoting *Remigio v. Kelly*, No. 04-CV-1877, 2005 WL 1950138, at *8 (S.D.N.Y. Aug. 12, 2005) (internal quotation marks omitted)).  In *SJB v. New York City Department of Education*, for example, while the court excused the plaintiffs from the IDEA's exhaustion requirement, the court rejected the idea that the continuing violation doctrine applied to the plaintiffs' procedural claims brought pursuant to the IDEA, and found that the "defendant's alleged failures to implement different IEPs from different years were each discrete, actionable offenses," No. 03-CV-6653, 2004 WL 1586500, at *8 (S.D.N.Y. July 14, 2004); *see also Scaggs*, 2007 WL 1456221, at *10 ("In the absence of case law within this Circuit applying the continuing violation doctrine to IDEA claims, this Court declines to do so in this case.").  Here, Plaintiffs have not demonstrated "compelling circumstances" that would support the application of the continuing violation doctrine to Plaintiffs' claims.  The adverse actions Defendant allegedly committed against Plaintiffs (the unilateral graduation of Rebecca and termination of special education funding) were discrete acts and, again, Plaintiffs did not request an IHO hearing regarding these allegedly adverse actions.  Accordingly, the Court finds that the continuing violation doctrine does not save Plaintiffs' untimely claims.

D.  Plaintiffs' Claims Against Powell

Plaintiffs allege that Powell is "authorized by the [Board] . . . 'to ensure compliance with all laws and regulations that affect the school district.'"  (SAC ¶ 12.)  Plaintiffs further allege that the Board's official policy "also makes it clear that . . . Powell is responsible for the execution, administration, and enforcement of all policies of the district.  The policy also authorizes . . . Powell to report to and be accountable to the Board . . . and not any officer, committee or individual member of the Board in fulfilling his responsibilities."  (*Id.* ¶ 13 (internal quotation marks omitted).)  Plaintiffs also allege that "[r]easonable Superintendents would have known about the clearly established procedural safeguards of § 1415 and would have complied with their obligations as recipients of federal funds.  Instead, . . . Powell acted in bad faith and used gross misjudgment to disregard the mandatory provisions of § 1415 which provided procedural safeguards for disabled children."  (*Id.* ¶¶ 21-22.)  Plaintiffs thus contend that Powell is personally responsible for any due process violations against Plaintiffs, claiming that Powell should have known that "disregarding [Plaintiffs'] due process rights . . . constituted discrimination against a qualified disabled student."  (*Id.* ¶ 22.)

Defendants argue that Plaintiffs' claims against Powell are barred by the statute of limitations because he was named for the first time in Plaintiffs' Second Amended Complaint, which was filed on June 30, 2008, and all of Plaintiffs' allegations against Powell are based on acts he committed on or before the October 12, 2004 IHO Order.  (Defs.' Mem. 9.)  Defendants further argue that the addition of Powell does not arise out of the same conduct, transactions, or occurrences that were set forth in the original Complaint, and further, that Powell did not have any expectation that Plaintiffs would need to amend their complaint twice before naming him as a Party.  (Defs.' Reply Mem. 6-7.)  Plaintiffs counter that their claims against Powell relate back

to the original Complaint because they arose out of the same conduct and occurrences set forth in the original Complaint, and Powell should have known that this action would have been brought against him but for a mistake concerning his identity.  (Opp'n 8.)

"If a complaint is amended to include an additional defendant after the statute of limitations has run, the amended complaint is not time barred if it 'relates back' to a timely filed complaint."  *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 128 (2d Cir. 2001).  Under Federal Rule of Civil Procedure 15(c), "[a]n amendment to a pleading" that names a new party "relates back to the date of the original pleading" if (1) the claims against the new party "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading" and, within 120 days after the complaint was filed, the new party (2) "received such notice of the action that it will not be prejudiced in defending on the merits" and (3) "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."  Fed. R. Civ. Pro. 15(c)(1)(B)-(C); *see also VKK Corp.*, 244 F.3d at 128 (same); *Abdell v. City of New York*, No. 05-CV-8453, 2006 WL 2620927, at *1 (S.D.N.Y. Sept. 12, 2006) (same).[13]

The New York relation-back doctrine "incorporates a standard similar to Rule 15(c)[]." *Bass v. World Wrestling Fed'n Entm't, Inc.*, 129 F. Supp. 2d 491, 508 n.13 (E.D.N.Y. 2001); *see also Buran v. Coupal*, 661 N.E.2d 978, 982 (N.Y. 1995).  "[U]nder New York law, an amended complaint relates back to the original complaint where:  '(1) both claims arose out of the same

---

[13] Rule 15 incorporates Federal Rule of Civil Procedure 4(m)'s 120-day period where it states that conditions (2) and (3) must be met "within the period provided by Rule 4(m) for serving the summons and complaint."  Fed. R. Civ. P. 15(c)(1)(C).  Rule 4(m) requires that the Defendant be served "within 120 days after the complaint is filed."  Fed. R. Civ. P. (4)(m); *see also Finnerty v. Wireless Retail, Inc.*, 624 F. Supp. 2d 642, 653 (E.D. Mich. 2009) (noting that 15(c)(1)(C)(i) and (ii) must be satisfied "within . . . 120 days of the filing of the original complaint").

conduct, transaction or occurrence, (2) the new party is united in interest with the original

defendant, and by reason of that relationship can be charged with such notice of the institution of

the action that the new party will not be prejudiced in maintaining its defense on the merits by

the delayed, otherwise stale, commencement, and (3) the new party knew or should have known

that, but for a mistake by the plaintiff as to the identity of the proper parties, the action would

have been brought against that party as well.'" *Abdell*, 2006 WL 2620927, at \*2 (quoting *Losner*

*v. Cashline, L.P.*, 757 N.Y.S.2d 91, 93 (App. Div. 2003)).

Under federal law, "if the claim arises under state law, or if the court borrows a state

statute of limitations, relation back is to be determined by whichever procedural rule gives the

most favorable result to the plaintiff." *Smith v. Rochester Tel. Bus. Mktg. Corp.*, 786 F. Supp.

293, 309 (W.D.N.Y. 1992)), *aff'd*, 40 F.3d 1236 (2d Cir. 1994); *see also Lieber v. Vill. of Spring*

*Valley*, 40 F. Supp. 2d 525, 532 (S.D.N.Y. 1999) ("[I]f a state's rules regarding relation back are

less rigorous than the federal rules, state principles apply."); *Blakeslee v. Royal Ins. Co.*, No. 93-

CV-1633, 1998 WL 209623, at \*6 (S.D.N.Y. Apr. 29, 1998) (applying more generous New York

relation-back rule).  Therefore, because New York's three-year statute of limitations is

applicable to Plaintiffs' claims, the Court will assess the applicability of the relation-back

doctrine to Plaintiffs' claims against Powell under both federal and New York State relation-

back principles and will apply the more generous of the two.

First, under both federal and New York State law, Plaintiffs must demonstrate that their

claims against Powell arose from the same conduct, transactions, or occurrences set forth in the

original Complaint.[14]  In their original Complaint, Plaintiffs alleged that Corrigan, the Assistant

---

[14] Plaintiffs' original Complaint also named, in addition to Corrigan, another individual
defendant, Richard P. Mills, Commissioner of the New York State Education Department.
However, the original Complaint contained no specific allegations against Mills, and Plaintiffs
removed him as a defendant in their Amended Complaint.  Plaintiffs have not asserted any

Superintendent, in his official capacity as the supervisor and policy maker for the District's special education programs, established unlawful policies and practices that the District adopted. (Compl. ¶¶ 18-22, 89.)  Plaintiffs further alleged that Corrigan was "liable for failing [in] his discretionary duties in regard to the training and supervising of the School District's employees to ensure that the School District is in compliance with federal and state laws governing the education of children with disabilities."  (*Id.* ¶ 18.)  Plaintiffs also alleged that on or about April 1999, Corrigan became "personally involved" with Rebecca when he received correspondence concerning the District's accommodation of her special education needs.  (*Id.* ¶ 60.)  Plaintiffs noted that "Corrigan made the School District's special education program's policies which were routinely adopted by the School District's Board of Education."  (*Id.* ¶ 20.)  Plaintiffs further alleged that the District's special education officials ignored the IDEA's Section 1415 procedural safeguards, which Corrigan himself allegedly established for the District.  (*Id.* ¶ 21.) Here, although Plaintiffs' allegations against Corrigan are distinct from their claims against Powell, they do arise out of the same conduct – the alleged violation of the IDEA's Section 1415 procedural safeguards and the District's alleged failure to ensure compliance with federal and state law governing the treatment of disabled students.  Accordingly, the Court finds that Plaintiffs have met the first prong of both the federal and New York State relation-back test.

Second, under Federal Rule of Civil Procedure 15(c)(1)(C)(i), Plaintiffs must show that Powell, the newly named Defendant, received notice of the action within 120 days of the filing of the initial Complaint.  Since the original Complaint was filed on October 12, 2007, Powell was required to have received notice by February 9, 2008.  But the Second Amended Complaint,

---

relation-back claims based on Mills in their opposition brief or at oral argument and, in any event, the Court finds no reason to apply the relation-back doctrine based on Plaintiffs' claims against Mills in the original Complaint.

which named Powell, was not filed until June 30, 2008, and does not allege that Powell had

actual notice of the suit within the 120-day period.  Therefore, in order to establish notice,

Plaintiffs must demonstrate that Powell had "constructive notice."

"Under the constructive notice doctrine, the court can impute knowledge of a lawsuit to a

new defendant government official through his attorney, when the attorney also represented the

officials originally sued, so long as there is some showing that the attorney[s] knew that the

additional defendants would be added to the existing suit." *Muhammad v. Pico*, No. 02-CV-

1052, 2003 WL 21792158, at *20 (S.D.N.Y. Aug. 5, 2003) (internal quotation marks omitted)

(alteration in original).  "The relevant inquiry for determining whether such constructive notice

should be based on 'sharing of counsel' is whether counsel 'knew or should have known' within

the limitations period that the additional defendants would be added." *Samuels v. Dalsheim*, No.

81-CV-7050, 1995 WL 1081308, at *14 (S.D.N.Y. Aug. 22, 1995) (quoting *Gleason v. McBride*,

869 F.2d 688, 693 (2d Cir. 1989)); *see also Abdell*, 2006 WL 2620927, at *4 ("'The inquiry is

not . . . whether defense counsel had actual knowledge but whether he "knew or should have

known" that the additional defendants would be added within the statute of limitations period.'"

(quoting *Campbell v. Coughlin*, No. 88-CV-697, 1994 WL 114831, at *2 (S.D.N.Y. Mar. 31,

1994))).

Corrigan and the District, who were named as defendants in the original Complaint, were

represented by the same attorney and law firm that now represent both Powell and the District.

However, Plaintiffs have not alleged or demonstrated that "the attorney knew that the additional

defendant[] would be added to the existing suit" within the limitations period, *Blaskiewicz v.

County of Suffolk*, 29 F. Supp. 2d 134, 139 (E.D.N.Y. 1998) (internal quotation marks omitted).

Nor have Plaintiffs demonstrated that counsel should have known, or even expected, that Powell

25

would be named as a defendant.  The core factual allegations against Corrigan are substantially

different from the claims asserted against Powell.  Corrigan was sued, according to Plaintiffs,

because he was the supervisor of and policy maker for the District's special education programs

and had personal involvement in the District's alleged adverse actions against Rebecca.

However, Plaintiffs do not claim that Powell was personally involved in the special education

programs, but rather that as Superintendent for the entire District, he knew or should have known

of any and all statutory violations that occurred in the District.  Such a claim is not sufficient to

show "notice" under the second prong of the test, and Powell was therefore prejudiced by

Plaintiffs' delay in adding him to their lawsuit.  *See Gleason*, 869 F.2d at 694 (rejecting

plaintiff's claim that, because the municipal defendant, which was timely served, had a duty to

indemnify the individual defendants, they should have been on notice that they were going to be

sued); *Starr v. Martinez*, No. 05-CA-84, 2006 WL 4511948, at *2 (W.D. Tex. Nov. 3, 2006)

("[N]aming a supervisor in a subordinate department is not sufficient notice to the head of the

agency to satisfy the [notice] requirement[ ] . . . ."); *cf. Samuels*, 1995 WL 1081308, at *14

(noting that insofar as the underlying complaint alleged beatings by unknown as well as known

corrections officers, it was obvious that plaintiff would seek to add additional defendants, and his

counsel should have known that "a particular category of defendants would be added to the

action").

      Third, Plaintiffs must show that Powell "knew or should have known that," "but for a

mistake concerning the proper party's identity," "the action would have been brought" against

him as well.  Fed. R. Civ. P. 15(c)(1)(C)(ii).  For example, courts have permitted relation-back

for legal mistake where plaintiffs "mistakenly sue[] an agency of the government without

knowing that the cause of action requires the [plaintiffs] to sue an agency head."  *Barrow v.*

*Wethersfield Police Dep't*, 66 F.3d 466, 469 (2d Cir. 1995), *modified*, 74 F.3d 1366 (2d Cir.

1996).  Courts also have permitted the addition of defendants when a plaintiff mistakenly

misidentified the wrong party as a defendant.  *See VKK Corp.*, 244 F.3d at 128 (finding factual

mistake where the original complaint named "Touchdown Jacksonville, Ltd." instead of

"Touchdown Jacksonville, Inc.").  However, in the Second Circuit, it is well settled under Rule

15 that "lack of knowledge does not constitute a 'mistake' for relation back purposes."  *Hickey v.

City of New York*, No. 01-CV-6506, 2004 WL 736896, at *3 (S.D.N.Y. Apr. 5, 2004).  "Rule

15(c) explicitly allows the relation back of an amendment due to a 'mistake' concerning the

identity of the parties (under certain circumstances), but the failure to identify individual

defendants when the plaintiff knows that such defendants must be named cannot be characterized

as a mistake."  *Barrow*, 66 F.3d at 470.  This is especially the case where a plaintiff fails to

search diligently for a defendant's identity.  *See Velez*, 2008 WL 5062601, at *9.

Here, the Court finds that Plaintiffs have not adequately shown factual mistake (i.e., that

Plaintiffs misapprehended the identity of the individual they wished to sue) or legal mistake (i.e.,

that plaintiffs misunderstood the legal requirements of their causes of action).  As Defendants

note, Powell's identity and dates of service as Superintendent are a matter of public record, thus

making inexplicable Plaintiffs' failure to name him as a defendant in the initial Complaint.

Indeed, Plaintiffs offer no evidence of a diligent search or even an explanation as to why they

failed to name Powell in the original Complaint, let alone the First Amended Complaint.  This

itself is fatal to Plaintiffs' claim.  *See Soto v. Brooklyn Corr. Facility*, 80 F.3d 34, 36 (2d Cir.

1996) (noting that where a plaintiff "had always known the identities of the individuals, and her

original complaint had been legally sufficient," she could not satisfy the mistake requirement of

Rule 15(c)); *accord Hall v. Norfolk S. Ry. Co.*, 469 F.3d 590, 596 (7th Cir. 2006) ("A plaintiff's

ignorance or misunderstanding about who is liable for his injury is not a 'mistake' as to the defendant's 'identity.'").

Moreover, it is clear that Powell was not a defendant in the original Complaint because Plaintiffs *chose* to name Corrigan in their original pleading; thus, there can be no claim of mistaken identity. *See Soto*, 80 F.3d at 36 (stating that an amended complaint does not relate back where the plaintiff has shown neither factual mistake nor legal mistake); *Easterling v. Dep't of Corr.*, No. 08-CV-826, 2009 WL 324160, at *9 (D. Conn. Feb. 9, 2009) (holding that claim did not relate back where plaintiff could not demonstrate that she misapprehended the identities of the individual she wished to sue at the time she filed her initial suit, or that she misunderstood the legal requirements of her cause of action); *Abdell*, 2006 WL 2620927, at *5 (holding that plaintiffs' lack of knowledge regarding newly named defendant's potential liability at time the original complaint was filed does not constitute a mistake under Rule 15). Accordingly, Plaintiffs' lack of knowledge of Powell's potential liability (if such was the case) does not satisfy the mistake requirement of Rule 15. *See Hickey*, 2004 WL 736896, at *3 (noting that plaintiffs' "alleged lack of knowledge" does not constitute a mistake for relation-back purposes).

New York's relation-back doctrine arguably is more generous than federal relation back doctrine and New York courts will "permit[] an amendment adding a party to relate back to the date the action was commenced against a party united in interest [as] consistent with the policy considerations underlying the statute of limitations." *Hemmings v. St. Marks Hous. Ass'n*, 642 N.Y.S.2d 1018, 1021 (Sup. Ct. 1996). But, Plaintiffs' relation-back argument fails even under the more lenient New York relation-back doctrine.

First, Plaintiffs have not shown that there is a "unit[y] [of] interest" between Corrigan

and Powell "such that they stand or fall together and that judgment against one will similarly affect the other." *Lord Day & Lord, Barrett, Smith v. Broadwall Mgmt. Corp.*, 753 N.Y.S.2d 68, 70 (App. Div. 2003) (internal quotation marks omitted); *see also Mondello v. N.Y. Blood Ctr.*, 604 N.E.2d 81, 84 (N.Y. 1992) (noting that plaintiff can show "unity of interest" where he can demonstrate vicarious liability). From Plaintiffs' own allegations, and as discussed above, Corrigan and Powell had different roles in the administration of the District's obligations under the IDEA.[15]

Second, Plaintiffs must still show that they acted in good faith and took steps to identify the unknown defendant within the statute of limitations period. *See Peralta v. Donnelly*, No. 04-CV-6559, 2009 WL 2160776, at *5 (W.D.N.Y. July 16, 2009) (noting that under New York law, a plaintiff must act in "good faith" and take "steps to obtain the information within the limitations period" such as "ma[king] diligent efforts [to] serve[] timely discovery requests and file[] a FOIL request for information to identify the unknown defendant"). Here, there is no indication that Plaintiffs acted in bad faith when they omitted Powell from their original Complaint. However, where a plaintiff had an opportunity to identify the proper defendant and failed to do so, a court will not find that a mistake was made for relation-back purposes under New York law and, accordingly, will not permit even a party united in interest to be added in a later amended complaint.

Here, as noted, Plaintiffs had ample time to recognize the publically identifiable superintendent of the District, but failed to do so earlier. *See Sloane v. Town of Greenburgh*, No. 01-CV-11551, 2005 WL 1837441, at *4 (S.D.N.Y. July 27, 2005) (declining to find, under New

---

[15] While there may be a unity of interest between the District and Powell, the Court need not reach that question because, as noted below, Plaintiffs' failure to name Powell in their original Complaint did not constitute a "mistake" for relation-back purposes.

York law, that plaintiff made a mistake when he failed to timely request records which could

have identified the proper parties); *Hampton Bays Connections, Inc. v. Duffy*, 212 F.R.D. 119,

125 (E.D.N.Y. 2003) ("Nowhere in the record does it indicate that the plaintiffs made diligent

efforts to identify the [newly named defendants]."); *Tucker v. Lorieo*, 738 N.Y.S.2d 33, 36 (App.

Div. 2002) (finding no mistake where failure to identify defendant was due to plaintiff's failure

to timely request documents); *cf. Peralta*, 2009 WL 2160776, at *5 (applying more lenient New

York standard and allowing relation back where the plaintiff "made timely efforts to identify the

John Doe defendant"); *Monir v. Khandakar*, 818 N.Y.S.2d 224, 226 (App. Div. 2006)

(permitting relation back where plaintiff lacked knowledge that defendant corporation was a

potential party until defendant's deposition one-and-a-half years after commencing the action).

Accordingly, the Court finds that Plaintiffs have failed to show mistake under New York law.

      Because Plaintiffs have failed to show either a mistake of law or a mistake of fact under

federal or state law in failing to name Powell in their original Complaint, or even their First

Amended Complaint, the Court finds that Plaintiffs' claims against Powell do not relate back to

the original date of the filing.  Therefore, all claims against Powell that involve conduct before

June 30, 2005 (three years before Powell was added as a defendant), are barred by the statute of

limitations.[16]

---

[16] Powell additionally contends that all claims against him should be dismissed on
qualified immunity grounds because Plaintiffs have failed to allege that Powell exceeded his
statutory authority.  (Defs.' Mem. 4.)  Because the Court finds that Plaintiffs' viable claims
against Powell do not relate back to the date of the original Complaint and, thus, may be barred
by the statute of limitations, the Court need not reach this claim.

      However, although this argument was not raised by Defendants and the Court does not
need to reach it here, the Court notes that there is a serious question about whether Plaintiffs
have alleged that Powell was personally involved in the unilateral graduation of Rebecca, in the
termination of her funding, or in any of the procedural violations of the IDEA; accordingly, there
is a possibility that the Second Amended Complaint fails to state a claim against Powell.  *See
Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001) (noting that it is "well settled . . .
that personal involvement" in the constitutional violation "is a prerequisite" (internal quotation

## III. Conclusion

For the reasons stated herein, Defendants' motion to dismiss is granted in part and denied in part. Plaintiffs' claims that accrued prior to October 12, 2004 are time-barred. In addition, Plaintiffs' claims against Powell that accrued prior to June 30, 2005 are likewise time-barred. Plaintiffs' equal protection claim is also dismissed. However, Plaintiffs' due process claims arising out of Defendants' alleged failure to implement the October 12, 2004 IHO Order and any due process violations subsequent to October 12, 2004 remain. Further, the Court directs the Parties to submit supplemental briefing on whether Plaintiffs have stated any claims against Powell that accrued on or after June 30, 2005. The parties' submissions are due within thirty days of this order, and may not exceed ten double-spaced pages.

The Clerk of the Court is respectfully requested to terminate the pending motion. (Dkt. No. 25.)

SO ORDERED.

Dated:      September 28, 2009
            White Plains, New York

                                        KENNETH M. KARAS
                                        UNITED STATES DISTRICT JUDGE

---

marks omitted)); *Lopez v. Zenk*, No. 06-CV-4601, 2008 WL 3285895, at *1 (E.D.N.Y. Aug. 8, 2008) (stating that plaintiff must allege that individual defendant was personally involved in the constitutional violation); *M.H. v. Bristol Bd. of Educ.*, 169 F. Supp. 2d 21, 35-36 (D. Conn. 2001) (finding that certain defendants were not liable because plaintiffs had not demonstrated their personal involvement in the alleged unlawful constitutional deprivations).

31

Service List (By ECF)
Ben M. Arai, Esq.
1175 Forest Avenue, Suite 3
Bronx, NY 10456
Email: bmarai@hotmail.com
*Counsel for Plaintiffs*

Neelanjan Choudhury, Esq.
Donoghue, Thomas, Auslander & Drohan, LLP
2517 Route 52
Hopewell Junction, NY 12533
Email: nchoudhury@dtad.net
*Counsel for Defendants*