UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: 7/30/13
```

------------------------------------------------------------x

WILLIAM PAPE and NANCY E. PAPE,
individually and as natural guardians of
Rebecca Pape, and REBECCA PAPE,

                        Plaintiffs,

  - against -

THE BOARD OF EDUCATION OF THE
WAPPINGERS CENTRAL SCHOOL DISTRICT,

                    Defendant.

------------------------------------------------------------x

**OPINION AND ORDER**

07 Civ. 8828 (ER)

Appearances:

Ben M. Arai, Esq.
Bronx, New York
*Counsel for Plaintiffs*

Neelanjan Choudhury, Esq.
Thomas, Drohan, Waxman, Petigrow & Mayle, LLP
Hopewell Junction, New York
*Counsel for Defendant*

RAMOS, D.J.:

      Plaintiff Riley Pape[1] ("Riley") and his parents, Plaintiffs William and Nancy E. Pape (the

"Parents") (collectively, "Plaintiffs") bring this civil rights action against Defendant Board of

Education of the Wappingers Central School District (the "District" or "Defendant"). Plaintiffs

bring this action under Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C.

§ 794; Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*; and

42 U.S.C. § 1983 ("Section 1983"), claiming violation of the Due Process Clause of the

---

[1] Plaintiff Riley Pape commenced this action under the name "Rebecca Pape." Plaintiff has asserted that he now uses the name "Riley Pape." Affirmation of Neelanjan Choudhury, Esq. in Support of Defendant's Motion for Summary Judgment ("Choudury Aff."), Ex. C (September 14, 2012 Deposition of Riley Pape ("Riley Tr.")) 6, Doc. 54. Accordingly, the Court will refer to him as Riley Pape.

Fourteenth Amendment.  Defendant now brings a motion for summary judgment seeking

dismissal of Plaintiffs' Second Amended Complaint in its entirety pursuant to Fed. R. Civ. P. 56.

Doc. 52.  For the reasons set forth below, Defendant's motion for summary judgment is

GRANTED.

## I.  Background[2]

---

[2]      In answering a motion for summary judgment pursuant to Fed. R. Civ. P. 56, litigants in this District are
required by our Local Rules to specifically respond to the assertion of each purported undisputed fact by the movant
and, if controverting any such fact, to support its position by citing to admissible evidence in the record.  *See* Local
Rule 56.1(b), (d); *see also* Fed. R. Civ. P. 56(c) (requiring reliance on admissible evidence in the record in
supporting or controverting a purported material fact).  "If the opposing party . . . fails to controvert a fact so set
forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted."  *Giannullo v. City of New York,*
322 F.3d 139, 140 (2d Cir. 2003).  These rules are designed to assist the Court by narrowing the scope of the issues
to be adjudicated and identifying the facts relevant and admissible to that determination.  *Holtz v. Rockefeller & Co.,*
258 F.3d 62, 74 (2d Cir. 2001) ("The purpose of Local Rule 56.1 is to streamline the consideration of summary
judgment motions by freeing district courts from the need to hunt through voluminous records without guidance
from the parties.").  Plaintiffs' Response to Defendant's Local Rule 56.1 Statement of Undisputed Material Facts
("Pls.' Resp. 56.1" or the "Statement"), Doc. 60-9,  fails to comply with these rules in several significant respects.

First, the Statement frivolously purports to deny certain factual assertions that a review of the record
establishes have previously been admitted by Plaintiffs in sworn testimony, or otherwise relied on by Plaintiffs.  *See,*
*e.g.*, Pls.' Resp. 56.1 ¶¶ 39, 68.  For example, during his deposition, Riley acknowledged that he had a vocational
assessment with VESID.  Riley Tr. 56-58.  However, in their Statement, Plaintiffs deny this assertion.  Pls.' Resp.
56.1 ¶ 68 ("Disputed Facts:  Inaccurate nowhere does it state that Riley had the assessment[.]  [I]n fact the district
has not brought forth any documentation in this motion or the depositions of Riley to prove that the evaluation had
occurred.  Nor did the Defendant provide a well thought out written plan to implement the vocation and pyschtirc
[sic] evaluation see April 18, 2005 IEP exhiit [sic] and Exhibit 3 pg 14[.]").

Second, the Statement fails to comply with Fed. R. Civ. P. 56(c) and Local Rule 56.1 in that it fails to
support many of Plaintiffs' purported denials with any citations to admissible evidence or with citations to evidence
that actually support Plaintiffs' contentions.  *See, e.g.*, Pls.' Resp. 56.1 ¶¶ 18-19.  As an example, in response to the
District's statement that it convened a CSE on April 18, 2005 where a new IEP was developed, Plaintiffs state:
"Disputed fact:  Inaccurate as most of the IEP of April 18, 2005 that was developed was actually ruled void from
[the IHO Officer] ([E]xhibit 3) did not accurately reflect [his] needs."  Pls.' Resp. 56.1 ¶ 18.  As the District notes,
Plaintiffs' response incorrectly states that the IEP was ruled void by the IHO, "and blatantly ignore[s] that the IHO's
decision preceded the CSE meeting where the IEP was developed."  Def.'s Reply Mem. 7.  Furthermore, Plaintiffs
have not produced any evidence that an administrative hearing officer or court of law has ruled the IEP in any way
deficient.  *See Holtz*, 258 F.3d at 74 (explaining that where, as here, there are no citations to admissible evidence, or
the cited materials do not support the purported undisputed facts in a party's Rule 56.1 statement, those assertions
must be disregarded and the court may review the record independently); *Costello v. N.Y. State Nurses Ass'n*, 783 F.
Supp. 2d 656, 661 n.5 (S.D.N.Y. 2011) (disregarding plaintiff's responses to defendant's Rule 56.1 statement where
plaintiff failed to refer to evidence in the record).

Third, the Statement improperly interjects arguments and/or immaterial facts in response to facts asserted by Defendant, without specifically controverting those facts. *See, e.g.*, Pls.' Resp. 56.1 ¶¶ 79, 81, 84-85, 87-90; *Costello*, 783 F. Supp. 2d at 661 n.5 (disregarding plaintiff's responses to defendant's Rule 56.1 Statement where plaintiff responded with conclusory assertions or legal arguments).  As an example, in response to the District's statement that during Riley's deposition he could not explain how a history of requesting due process hearings provided the District with a motive to retaliate against him and his family, Plaintiffs state:  "Inaccurate Riley Pape is not a lawyer and does not have the legal training to articulate the law with the facts of the case which is almost a decade old[.]  The Defendant has not shown that Mr. Pape has that ability.  Additionally, see reasons that described [sic] in paragraph 56."  Pls.' Resp. 56.1 ¶ 79.  Plaintiffs' response in Paragraph 56 states:  "Riley's own disability impacts h[is] ability regarding confrontation as Riley has testified at hearings and attended CSE meetings but cannot handle and does not understand them see [IHO's] decisions and exhibits which was not addressed on the April 18 2005 IEP, Furthermore, the Defendant failed during discovery in this proceeding to order any evaluations including a psychiatric evaluation of Riley to dispute [his] claims under paragraphs 48 and 50 of the second amended complaint regarding [his] mental and emotional state."  *Id.* ¶ 56.  In addition to being inscrutable, Plaintiffs' response is not supported by any evidence or explanation why legal training is necessary to respond to the factual assertion.  Def.'s Reply Mem. 8.

In other instances, counsel neither admits nor denies a particular fact, but instead responds with equivocal statements such as:  "Disputed fact:  Inaccurate and omission[.]  [However,] [i]t is agreed . . . .[,]" Pls.' Resp. 56.1 ¶ 47; "Plaintiff's [sic] Agreed[.]  However, it is because they could not address [his] emotional needs that was the Defendants [sic] Responsibility . . .[,]" *id.* ¶ 91; and "Plaintiffs [sic] Agree however Plaintiff's [sic] still maintains the right of appeal."  *Id.* ¶¶ 28-29, 34.  "Responses of this nature, which do not point to any evidence in the record that may create a genuine issue of material fact, do not function as denials, and will be deemed admissions of the stated fact."  *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 458 n.1 (S.D.N.Y. 2011); *see also Costello*, 783 F. Supp. 2d at 661 n.5 (disregarding plaintiff's responses where plaintiff failed to specifically dispute defendant's statements); *Buckman v. Calyon Secs.*, 817 F. Supp. 2d 322, 328 n.42 (S.D.N.Y. 2011) ("56.1 statements not explicitly denied by plaintiff are deemed admitted"); *Geoghan v. Long Island R.R.*, 06 Civ. 1435 (CLP), 2009 WL 982451, at *5-6 (E.D.N.Y. Apr. 9, 2009) ("Since plaintiff's response does not dispute the accuracy of the assertion, the assertion is deemed to be admitted by plaintiff for purposes of this motion.").

The balance of the submissions by Plaintiffs' counsel in no way serve to cure the deficiencies in Plaintiffs' 56.1 Statement and, indeed, Plaintiffs' other submissions simply serve to add to the Court's burden.  First, Riley's Affidavit purports to correct numerous "erroneous statements" by the District.  Doc. 60-6.  However, these "corrections" consist of improper averments, including proposed corrections to the 2004 IHO Order, assertions that are explicitly contradicted by Riley's own deposition testimony, and argumentative responses to the District's 56.1 Statement. *See Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 131 n.12 (2d Cir. 2004) (noting that district court was free to disregard hearsay statements and speculation in affidavits); *Flaherty v. Filardi*, 03 Civ. 2167 (LTS) (HBP), 2007 WL 163112, at **4-5 (S.D.N.Y. Jan. 24, 2007) (disregarding inadmissible portions of plaintiff's affidavit in analyzing motion for summary judgment); *Morris v. Northrop Grumman Corp.,* 37 F. Supp. 2d 556, 568-69 (E.D.N.Y. 1999) (same); *Rojas v. Roman Catholic Diocese of Rochester*, 783 F. Supp. 2d 381, 406-07 (W.D.N.Y. 2010) (plaintiff's affidavit that disputes her own prior sworn testimony must be disregarded), *aff'd*, 660 F.3d 98 (2d Cir. 2011), *cert. denied*, 132 S. Ct. 1744 (2012); *Jeffreys v. City of New York*, 426 F.3d 549, 554-55 (2d Cir. 2005) (same) (citing *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 468-71 (S.D.N.Y. 1998) (Sotomayor, J.), *aff'd*, 205 F.3d 1324 (2d Cir. 2000)).  Second, Plaintiffs' Memorandum of Law, while replete with factual arguments which could conceivably have raised a genuine issue of material fact, *does not contain one single citation to the record*.  By way of further example, counsel devotes approximately two pages of Plaintiffs' Memorandum to defending a purported IDEA claim.  Pls.' Opp. Mem. 5-7.  However, there is *no* IDEA claim in the Complaint.  In

Riley, currently twenty-nine years old, was previously classified by the District as a student with a disability, specifically, an emotional disturbance.  Plaintiffs' Response to Defendant's Local Rule 56.1 Statement of Undisputed Material Facts ("Pls.' Resp. 56.1" or the "Statement") ¶¶ 1-4, Doc. 60; Declaration of Ben M. Arai, Esq. in Opposition to Defendant's Motion for Summary Judgment ("Arai Decl."), Ex. 2 ("2004-05 IEP") at 1, Doc. 60.  Riley's disability impaired his ability to attend a regular school program and he was placed at The Summit School, a private residential school for emotionally disturbed students, for the 2002-03 school year, when he was eighteen years old.  Pls.' Resp. 56.1 ¶¶ 4-5; Arai Decl., Ex. 1 ("2004 IHO Order") at 3.

On March 27, 2003, the Plaintiffs requested a due process hearing pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq.,[3] and New York

---

the Parents' affidavits in "Opposition to Defendants' [sic] Statement of Maerial [sic] Facts No [sic] In Dispute Pursuant to Fed.R.Civ.P. 56(e),"Pls.' Ex. 3-4, Doc. 60-6, each Parent explicitly states that they are "not suing the defendant[] under the IDEA for compensatory related services because such remedies are totally inadequate to compensate me for the injuries that my family and I have suffered at the hands of the defendant[] . . . ."  Pls.' Exs. 3 ¶ 6, 4 ¶ 6; see also Pls.' Ex. 5 ¶¶ 2, 5.

Although the Court is not required to search the record for genuine issues of material fact that the parties opposing summary judgment failed to bring to its attention, Holtz, 258 F.3d at 73, the net result of counsel's deficiencies has been to impose on the Court and its limited resources the burden of parsing the entirety of the record in the instant case to ensure that his clients' claims receive thorough and just consideration.

In sum, for the reasons set forth above, in analyzing the instant motion, the Court has disregarded:  (1) averments in Plaintiffs' Statement that are not denials of the specific facts asserted by Defendant, or not supported by citations to admissible evidence in the record, or that are contradicted by other admissible evidence in the record, or that are improper legal arguments and (2) improper assertions and arguments contained in Riley's affidavit.

[3]      Congress enacted the IDEA to encourage the education of children with disabilities.  E.A.M. ex rel. E.M. v. N.Y.C. Dep't of Educ., 11 Civ. 3730 (LAP), 2012 WL 4571794, at *1 (S.D.N.Y. Sept. 29, 2012) (citing Bd. of Educ. v. Rowley, 458 U.S. 176, 179 (1982)).  Under the statute, any state receiving federal funds must provide a free appropriate public education ("FAPE") to disabled children.  20 U.S.C. § 1412(a)(1)(A); Rowley, 458 U.S. at 179.

To satisfy its obligation, the FAPE provided by the state must include "special education and related services" tailored to meet the unique needs of the particular child, 20 U.S.C. § 1401(9), and be "reasonably calculated to enable the child to receive educational benefits."  Rowley, 458 U.S. at 207.  A public school ensures that a student with disabilities receives a FAPE by providing the student with an Individualized Education Plan ("IEP").  Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist., 288 F.3d 478, 482 (2d Cir. 2002).  An IEP is

State law seeking, *inter alia*, a psychiatric evaluation for Riley, full participation for the Parents during CSE meetings, and a Transitional Service and Planning IEP for Riley's pending graduation from high school.  Arai Decl., Ex. 9 at 1-4.

In June 2003, when Riley was nineteen years old, the District graduated him from The Summit School.  Pls.' Resp. 56.1 ¶¶ 4-5.  Upon graduation, the District directed Plaintiffs to the State Education Department's Office of Vocational and Educational Services for Individuals with Disabilities ("VESID") for future services for Riley.  2004 IHO Order at 4, 9-10, 12.

    a.  <u>Administrative Proceedings</u>

On December 30, 2003, an Impartial Hearing Officer ("IHO") commenced a due process hearing pursuant to Plaintiffs' March 27 request.  On October 12, 2004, the IHO issued an order

---

a written statement, collaboratively developed by the parents, educators, and specialists, that "sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives."  *Honing v. Doe*, 484 U.S. 305, 311 (1988), *superseded by statute, Joshua A. v. Rocklin Unified Sch. Dist.*, 559 F.3d 1036 (9th Cir. 2009).

Because New York State receives federal funds under the IDEA, it must comply with the requirements of the statute.  *Walczak v. Florida Union Free Sch. Dist.,* 142 F.3d 119, 123 (2d Cir. 1998).  In New York, the task of developing an IEP rests with local Committees on Special Education ("CSEs"), whose members are appointed by the board of education or trustees of the school district.  N.Y. Educ. Law § 4402(1)(b)(1); *Heldman on Behalf of T.H. v. Sobol*, 962 F.2d 148, 152 (2d Cir. 1992).  Here, it is undisputed that Plaintiffs resided in the District, which is a local public agency serving Wappingers Falls, New York and which receives federal financial assistance.  Second Amended Complaint ("SAC") ¶¶ 9-10, Doc. 22.

"Parents may challenge the adequacy of their child's IEP in an 'impartial due process hearing' before an [Impartial Hearing Officer ("IHO")] appointed by the local board of education."  *E.A.M. ex rel. E.M.,* 2012 WL 4571794, at *2 (quoting *Gagliardo*, 489 F.3d at 109).  The IHO must "render a decision ... not later than forty-five days from the date required for commencement of the impartial hearing."  N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(j)(5) (2009).  The IHO's decision may be appealed to a State Review Officer ("SRO"), and the SRO's decision can be challenged in either state or federal court.  *E.A.M. ex rel. E.M.,* 2012 WL 4571794, at *2 (citation omitted).  "These two levels of review must be exhausted before an aggrieved party may commence an action in federal court."  *McAdams v. Bd. of Educ. of Rocky Point Union Free Sch. Dist.,* 216 F. Supp. 2d 86, 93 (E.D.N.Y.2002) (citing 20 U.S.C. § 1415(i)(2)(A)).

Additionally, the IDEA's stay-put provision requires that "the child ... remain in the then-current educational placement" during the pendency of these proceedings, "unless the State or local educational agency and the parents otherwise agree."  20 U.S.C. § 1415(j); *see also Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.,* 297 F.3d 195, 199 (2d Cir.2002) ("Section 1415(j) establishes a student's right to a stable learning environment during what may be a lengthy administrative and judicial review.").

(the "2004 IHO Order"), finding that the District had failed to provide Riley with psychological and vocational counseling, psychiatric evaluations, and transitional services (collectively, the "Transitional Services")[4] to prepare him to be self-sufficient after graduation and to provide him with the independent life skills necessary for college. 2004 IHO Order at 1, 12-14. Accordingly, the IHO ordered the following:

> The District will arrange to immediately reconvene the CSE and create a plan for [Riley's] transition services in accord with this decision. [Riley] must attend this review, either by phone or in person. Should [Riley] not attend the review after proper notice, the District shall have no obligation to provide further transition plans or services. Should [Riley] attend the review, the review team shall *thoughtfully consider* the need to provide [Riley] with counseling, a psychiatric evaluation, a vocational assessment, [] job options, [and] college options. If such options are deemed appropriate, a clear and well-reasoned plan to deliver such options shall be written and distributed to the parties.

*Id.* at 14. (emphasis supplied). The IHO also noted that, following the CSE review meeting, a new IEP should be created and its creation would void Riley's prior IEP. *Id.* at 13-14. Plaintiffs did not appeal the 2004 IHO Order to the State Review Officer ("SRO"). Pls.' Resp. 56.1 ¶ 17.

On April 18, 2005, sixth months after the 2004 IHO Order, the District convened a CSE meeting and developed a new IEP for Riley. 2004-05 IEP at 1. Although Riley claims that he did not attend this CSE meeting, Riley Tr. 47, the resulting IEP reflects that Riley was in attendance at the meeting. 2004-05 IEP at 3-4. At the meeting, the CSE discussed providing Riley with Transitional Services. Specifically, the IEP stated:

> With regard to instructional activities, the student should have the opportunity to meet with a counselor to identify and discuss areas of interest and appropriate activities. To prepare for employment, the student should participate in activities which discuss and identify appropriate employment seeking skills. VESID

---

[4] Transitional services are defined as "a coordinated set of activities for a student, designed with an outcome-oriented process that promotes movement from school to post-school activities, including post-secondary education, vocational training, integrated employment (including supported employment), continuing and adult education, adult services, independent living, or community participation." 2004 IHO Order at 11.

services have been arranged [] by The Summit School.  Ms. Donna Montross [from VESID] has been in contact with [Riley] and with [his] parents. Transitional services are available for [Riley] through the Poughkeepsie VESID Office.

*Id.* at 3.  The CSE also recommended psychiatric and vocational evaluations to assist with Riley's transition to a college program.  Pls.' Resp. 56.1 ¶ 20.

Plaintiffs' attorney concedes that Riley went to VESID after the 2004 IHO Order. Choudhury Aff., Ex. E (September 17, 2012 Deposition of William Pape ("William Tr.") 28-29, Doc. 54; *see also* Riley Tr. 53-60 (although he cannot recall the specific date, Riley admits that he went to VESID to discuss Transitional Services).  According to Riley, when he went to VESID, he was informed that he did not qualify for VESID services because his Parents exceeded the organization's income requirements.  Pls.' Resp. 56.1 ¶ 69; *see also id.* ¶ 71; Choudhury Aff., Ex. D (September 17, 2012 Deposition of Nancy E. Pape ("Nancy Tr.") 25, Doc. 54 (Plaintiffs cannot recall VESID's income threshold).  However, Riley did not contact the District after being informed that he was not eligible for VESID services and does not know if anyone contacted the District on his behalf to convey such information.[5]  Riley Tr. 60; *see also* Nancy Tr. 26 (Riley's mother could not recall if she had contacted the District after Riley informed her of VESID's income restriction).

---

[5] During his deposition, Riley was asked about his visit to VESID:

Q:  When VESID told you they could not help you because your parents made too much, did you contact anyone from the [District]?

A:  Myself, no.

Q:  Do you know if anyone contacted the District on your half?

A:  I do not know.

Riley Tr. 60; *see also id.* 109-110; Nancy Tr. 25-26.

On November 4, 2005, Riley underwent a psychiatric evaluation by Dr. Richard Hahn. Arai Decl., Ex. 6 (November 4, 2005 Evaluation by Dr. Richard A. Hahn, M.D.); *see also* William Tr. 28-29 (Plaintiffs' attorney also concedes that Riley saw a psychiatrist after the 2004 IHO Order). In his report, Dr. Hahn noted that the examination was requested by the District as part of a VESID referral to assist with vocational and educational planning. Arai Decl., Ex. 6 at 1.

Despite Riley's visit to VESID and psychiatric evaluation, Plaintiffs believed that the District had failed to comply with the 2004 IHO Order and requested that a different IHO review the 2004 IHO Order. Arai Decl., Ex. 7 (October 15, 2006 IHO Order). On October 15, 2006, a second "reviewing" IHO dismissed Plaintiffs' request stating that he did not have subject matter jurisdiction. *Id.* Then, in early November 2006, Plaintiffs appealed to the SRO seeking enforcement of the 2004 IHO Order. Pls.' Resp. 56.1 ¶ 22.

On December 8, 2006, the SRO denied Plaintiffs' appeal, holding that the reviewing IHO lacked the authority to enforce the 2004 IHO Order and that Plaintiffs could seek enforcement of the 2004 IHO Order by filing an administrative complaint with VESID pursuant to applicable federal and state regulations, or in federal court under Section 1983. Arai Decl., Ex. 8 (December 8, 2006 SRO Decision) at 2. The SRO decision further stated:

> . . . [P]etitioners assert that the [initial IHO] in this case violated multiple state regulations during the course of the proceeding. For example, petitioners assert that the [IHO] failed to state to the parties whether he could issue his decision within the required timelines, and that he failed to address and clarify issues at the prehearing conference. I find that petitioners' assertions fail to identify procedures that were inconsistent with due process . . . or that denied petitioners' [son] a [FAPE] . . . .

*Id.*

b.  Riley's Progress During the Pendency of the Administrative Proceedings

As previously discussed, the District graduated Riley from The Summit School in June 2003.  In August 2005, Riley enrolled in college at The State University of New York College of Agriculture and Technology at Cobleskill ("SUNY Cobleskill").  Riley Tr. 29-31; Pls.' Resp. 56.1 ¶ 44.  However, Riley left SUNY Cobleskill halfway through the Fall 2005 semester because he claimed that he could not properly address his anxiety problems and he "couldn't handle the people."  Riley Tr. 32, 64; Pls.' Resp. 56.1 ¶¶ 45-46.

Since leaving SUNY Cobleskill, Riley has worked as a stock clerk at Kohl's department store, and currently works at a Kohl's store in Canton, Georgia.  Pls.' Resp. 56.1 ¶ 35; Rile Tr. 36.  He has not applied for a higher salaried position outside of Kohl's because it is his belief that any higher salaried position will require a post-secondary degree.  Riley Tr. 123-24; Pls.' Resp. 56.1 ¶ 40.

In their Second Amended Complaint, Plaintiffs allege that, because he was not provided with Transitional Services by the District, Riley lacked the skills necessary to succeed in college and the workplace and can now only hold a part-time job.  SAC ¶¶ 29, 47-48.  Riley further asserts that if he had received additional services from the District, he would have had a "better shot" at succeeding in college.  Id. ¶¶ 29, 48; Riley Tr. 105-06.

c.  Procedural History

Plaintiffs commenced this action on October 12, 2007 and filed a Second Amended Complaint on June 30, 2008.  Docs. 1, 22.  Plaintiffs' Second Amended Complaint asserted a civil rights action against the District and the Superintendent of the District.  Plaintiffs alleged violations under Section 504; the ADA; and Section 1983, claiming violations of the Due

9

Process and Equal Protection Clauses of the Fourteenth Amendment.[6]  Plaintiffs alleged that Defendants, the District and the Superintendent of the District, purposefully did not respond to their March 27, 2003 request for a due process hearing, failed to appoint an IHO in a timely manner, failed to commence a timely hearing, and did not render an IHO decision within forty-five days of the hearing as required by law.  SAC ¶¶ 35-37.[7]  Plaintiffs also claimed that the District violated the IDEA's stay-put provision by unilaterally graduating Riley before he turned twenty-one.  *Id.* ¶ 42.  Finally, Plaintiffs alleged that Defendants did not implement the October 12, 2004 IHO Order and unlawfully attempted to shift the burden of paying for Transitional Services to Plaintiffs by requiring them to pay VESID, which they were unable to do.  *Id.* ¶ 45.

On November 13, 2008, Defendants filed a motion to dismiss Plaintiffs' claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Defendants sought dismissal of Plaintiffs' (1) equal protection claims; (2) claims that accrued prior to October 12, 2004, as barred by the applicable statute of limitations; and (3) claims against the District Superintendent. *See Pape v. Bd. of Educ. of the Wappingers Cent. Sch. Dist.*, 07 Civ. 8828 (KMK), 2009 WL 3151200, at *3 (S.D.N.Y. Sept. 29, 2009).  On September 29, 2009 and June 16, 2010, the Honorable Kenneth M. Karas issued rulings granting Defendants' motion.  Docs. 28, 31; *Pape*, 2009 WL 3151200, at *16.

In dismissing Plaintiffs' claims that accrued before October 12, 2004, Judge Karas noted:

> [T]here is no allegation that Plaintiffs ever requested an IHO hearing to address the unilateral graduation and special education termination claims.
> . . .
> To the extent that Plaintiffs are alleging that Defendants discriminated against

---

[6] Plaintiffs only alleged a procedural violation of the Due Process Clause. *See* SAC ¶ 46.

[7] The October 12, 2004 IHO Order noted that "[t]he matter was extended numerous times with the consent of the parties and the [IHO] and without a showing of prejudice to the student."  2004 IHO Order at 10 n.1.

them by violating the forty-five day requirement to resolve a request for an IHO hearing, this claim is also time-barred.   In addition, the Court notes that the October 12, 2004 IHO Order states that Plaintiffs 'consent[ed]' to the extension of the matter from March 2003 through its resolution in October 2004.  (October 12, 2004 IHO Order 10 n.1.)

. . .

Moreover, Plaintiffs are not entitled to equitable tolling during the period in which they sought enforcement of the October 12, 2004 IHO Order through the IHO and SRO process.  As noted above, the October 12, 2004 IHO Order did not address Plaintiffs' due process claims related to [Riley]'s unilateral graduation or termination of special education funding, and Plaintiffs' enforcement efforts at the administrative level were focused on the implementation of the October 12, 2004 IHO Order, namely, the provision of Transitional Services to [Riley] . . . Accordingly, the Court finds that equitable tolling is not available for Plaintiffs' due process claims that accrued prior to October 12, 2004.

. . .

[Further,] [a]lthough not argued by Plaintiffs, the court has also considered whether Plaintiffs' claims are timely under the theory that Defendant[]' alleged violations constitute 'continuing violations' that began in June 2003 and continue to the present day . . . Here, Plaintiffs have not demonstrated 'compelling circumstances' that would support the application of the continuing violation doctrine to Plaintiffs' claims.

*Pape*, 2009 WL 3151200, at **9, 9 n.10, 10, 10 n.12.

Nevertheless, Judge Karas held that (1) Plaintiffs' due process claims arising out of the District's alleged failure to implement the October 12, 2004 IHO Order and provide Riley with Transitional Services and (2) any due process violations subsequent to October 12, 2004 survived the motion to dismiss.  *See Pape*, 2009 WL 3151200, at **11, 16.  Accordingly, the remaining claims against the District are Plaintiffs' claims under Section 504, the ADA, and the Due Process Clause post-October 12, 2004.

On January 19, 2012, the case was transferred to the undersigned.  Doc. 43.  On December 21, 2012, the District filed a motion for summary judgment seeking dismissal of the Second Amended Complaint.  Doc. 52.  Plaintiffs filed an opposition to the motion on February 25, 2013 and the District filed its reply memorandum on March 5, 2013.  Doc. 60-61.

d.  Deposition Testimony

The District conducted depositions of the Plaintiffs on September 14 and 17, 2012.

Choudury Aff., Exs. C-E.[8]  During Riley's deposition, he testified that the District had refused to

"[g]ive [him] everything [he] needed," which he described as Transitional Services.  Riley Tr.

100.

Riley also testified that because the District had previously provided him with

accommodations in response to his disability, the District "should have known" that his disability

would lead to failure after graduation.  Pls.' Resp. 56.1 ¶ 89; Riley Tr. 102-04.  According to

Riley, failure after graduating from The Summit School meant not being admitted to a "great

college" or attaining a medical degree.  Pls.' Resp. 56.1 ¶ 90; Riley Tr. 104.  He does not

consider SUNY Cobleskill to be a "great college."  Pls.' Resp. 56.1 ¶ 91; Riley Tr. 104.

Riley testified that he did not know how or why the District had retaliated against him

and his Parents, Riley Tr. 96, 99, and could not explain why a history of requesting due process

hearings concerning his emotional issues provided a motive for the District to retaliate against

them.  Pls.' Resp. 56.1 ¶ 79; Riley Tr. 97-98; *see also* Riley Tr. 101, 117 (testifying that he did

not know whether the District actually lost two prior hearings to the Plaintiffs and whether this

provided a motive for retaliation).  Finally, he does not know of anyone at the District who had a

"discriminatory mindset" or "discriminatory animus" against him because of his disability.

Riley Tr. 115; Pls.' Resp. 56.1 ¶¶ 81, 98.  Rather, when asked why he assumed that the District

had discriminatory animus against him, Riley replied, "[T]hey didn't give me what I needed so

there has to be a reason."  Pls.' Resp. 56.1 ¶ 99; Riley Tr. 114.

Riley's mother, Nancy Pape, alleges that the District's prior loss of two special education

---

[8] Plaintiffs did not request to conduct any depositions during discovery.  Pls.' Resp. 56.1 ¶ 32.

hearings provided a "strong motive" for the District to retaliate against her family.  In that regard, she stated:  "I only have my own firm belief and that is part of what caused them to do so."  Nancy Tr. 51; Pls.' Resp. 56.1 ¶ 87.  When discussing her views on what constituted retaliation by the District, Nancy Pape referred to the "constant delay to provide any kind of services and generally not providing these services to my child . . . ."  Nancy Tr. 67.  Then, she was asked how she knew that the District's delays were retaliatory in nature and she responded:  "I have no definite knowledge, just a strong a strong belief that it is what it was."  *Id.* at 68.  Later, when asked if she knew whether the District purposefully disregarded the IDEA's stay put provision, and unilaterally graduated Riley from The Summit School, in order to retaliate against Plaintiffs, she stated:  "[The District] disregarded and delayed to the point my child chose to go to college on his own and failed because none of the services were in place . . . . ."  *Id.* 56-57.

Finally, during his deposition, Riley's father, William Pape testified that he knew that the District was motivated to retaliate against his family because "[the District] failed to follow the rules of the laws of the federal government, [it] decides what laws [it] want[s] to follow and no matter what the judges tell [it] to do, [it] just do[es] whatever [it] want[s] to do."  William Tr. 40-41; *see also id.* 44-45.  When asked to elaborate on his answer, the following line of questioning took place:

> Q.  If the [D]istrict has [as] you said failed to follow the rules, how do you know that their failure to follow the rules is motivated – was motivated by a wish to retaliate against you?
>
> A.  Because every time we went in for a hearing, the school lost.  So the only way to get back at us is by retaliation.
> . . .
> Q.  Do you have any firsthand knowledge that is why the [D]istrict retaliated against you?
>
> A.  If you do not follow the orders of the judge and 504 and any other federal law,

13

it's retaliation.  We have rights.

Q.  Is that your opinion?

A.  It's just the United States, it's not communist Russia.

Q.  Is that your opinion?

A.  No, that's a fact.

*Id.* 41-42.  Later, when asked why he thought that the District allegedly hated to lose impartial

due process hearings, William Pape responded, "Because I said so."  *Id.* 44.

## II. Discussion

### a. Standard of Review

Summary judgment is only appropriate where the "materials in the record, including

depositions, documents, electronically stored information, affidavits or declarations, stipulations

(including those made for purposes of the motion only), admissions, interrogatory answers, [and]

other materials" show "that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), 56(c).  "An issue of fact is

'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving

party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011)

(citing *SCR Joint Venture L.P. v. Warshawsky,* 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is

"material" if it might affect the outcome of the litigation under the governing law.  *Osberg v.*

*Foot Locker, Inc.*, 907 F. Supp. 2d 527, 532 (S.D.N.Y. 2012) (citing *Anderson v. Liberty Lobby*,

477 U.S. 242, 248 (1986)).

The party moving for summary judgment is first responsible for demonstrating the

absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986); *see also Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir. 2005).

"When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009) (citing *Celotex Corp.*, 477 U.S. at 322-23); *see also* Fed. R. Civ. P. 56(c)(1)(B). The burden then shifts to the non-moving party to come forward with admissible evidence sufficient to support each essential element of the claim, and "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (internal quotation marks omitted); *see also Cordiano*, 575 F.3d at 204.

In deciding a motion for summary judgment, the Court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" *Brod v. Omya, Inc.,* 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.,* 368 F.3d 123, 126 (2d Cir. 2004)). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). A motion for summary judgment cannot be defeated on the basis of conclusory assertions, mere denials or unsupported alternative explanations of facts. *Major League Baseball Properties, Inc. v. Salvino, Inc.,* 542 F.3d 290, 310 (2d Cir. 2008) (collecting cases); *see also Senno*, 812 F. Supp. 2d at 467 (citing *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir. 1998)). The non-moving party must do more than show that there is "'some metaphysical doubt as to the material facts,'" *McClellan v. Smith,* 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)), it "must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467-68 (citing *Anderson*, 477 U.S. at 256-57). On summary judgment,

"the district court may rely on any material that would be admissible or usable at trial." *Major League Baseball,* 542 F.3d at 309 (internal quotations and citations omitted).

"Summary judgment is properly granted when the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Abramson v. Pataki,* 278 F.3d 93, 101 (2d Cir. 2002) (quoting *Celotex Corp.,* 477 U.S. at 322). In that situation, there can be no "genuine dispute as to any material fact," since a failure of proof on an essential element of the non-moving party's case "necessarily renders all other facts immaterial." *Celotex Corp.,* 477 U.S. at 322-23.

In cases alleging discrimination, "caution must be exercised in granting summary judgment where intent is genuinely in issue, [although] summary judgment remains available to reject discrimination claims in cases lacking genuine issues of material fact." *D.C. ex rel. E.B. v. N.Y.C. Dep't of Educ.,* 12 Civ. 1394 (JGK), 2013 WL 1234864, at *20 (S.D.N.Y. Mar. 26, 2013) (quoting *Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 40 (2d Cir. 1994)) (internal citations omitted); *see also id.* (citing *Abdu–Brisson v. Delta Air Lines, Inc.,* 239 F.3d 456, 466 (2d Cir. 2001) ("[S]ummary judgment may be appropriate even in the fact-intensive context of discrimination cases.... [T]he salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to other areas of litigation.")) (alteration and citations and internal quotation marks omitted).

## b. Re-Litigating Issues Decided by Judge Karas on the Prior Motion to Dismiss

As an initial matter, the majority of Plaintiffs' objections to summary judgment are directed at issues already decided by Judge Karas in his decision of September 29, 2009. Plaintiffs currently argue that the District violated their due process rights when it used dilatory

16

tactics to delay the impartial due process hearing resulting in the October 12, 2004 IHO Order. Pls.' Opp. Mem. 1-4.  Specifically, they allege that the District (1) violated the forty-five day requirement to resolve a request for an IHO hearing, (2) denied Plaintiffs meaningful participation during the impartial hearing process, and (3) violated Riley's right to remain in his then current placement during the pendency of the IHO hearing.  *Id.* at 4-7.  Plaintiffs further allege that they are entitled to tolling of the statute of limitations for delays during the impartial hearing process.  *Id.* at 15-16; Pls.' Opp. Mem. to Mot. to Dismiss at 8, Doc. 26 (raising same issue before Judge Karas on the motion to dismiss).  Plaintiffs' claims are not relevant to this motion since Judge Karas' prior rulings are the law of the case.

The law of the case doctrine "is implicated when a court reconsiders its own ruling on an issue in the absence of an intervening ruling on the issue by a higher court.  It holds that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case, unless cogent and compelling reasons militate otherwise." *U.S. v. Quintieri,* 306 F.3d 1217, 1226 (2d Cir. 2002) (citations and internal quotation marks omitted); *Aramony v. United Way,* 254 F.3d 403, 410 (2d Cir. 2001).  Application of the doctrine is discretionary and does not limit a court's power to reconsider its own decisions prior to a final judgment in the case. *Williams v. City of New York*, 03 Civ. 5342 (RWS), 2005 WL 901405, at *9 (S.D.N.Y. Apr. 19, 2005).  "A district court may revisit such decisions but with the caveat that 'where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" *Bergerson v. N.Y. State Office of Mental Health,* 652 F.3d 277, 288 (2d Cir. 2011) (quoting *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003)).  "Cogent and compelling reasons to revisit an earlier decision are generally found only where

there is an intervening change of controlling law, the availability of new evidence, or the need to

correct a clear error or prevent a manifest injustice." *Oakley Fertilizer Inc. v. Hagrpota for*

*Trading & Distribution, Ltd.*, 11 Civ. 7799 (PAC), 2012 WL 5844193, at *2 (S.D.N.Y. Nov. 16,

2012) (quoting *Coopers & Lybrand LLP,* 322 F.3d at 167) (internal quotation marks omitted);

*see also id.* (citing *Bergerson*, 652 F.3d at 288 ("generally, there is a strong presumption against

amendment of prior orders.")).

In the instant case, as discussed above, Judge Karas dismissed Plaintiffs' claims that

accrued prior to October 12, 2004, as barred by the applicable statute of limitations, and

explicitly addressed Plaintiffs' arguments regarding the forty-five day IHO decision delay, lack

of participation in the hearing process, and unilateral graduation of Riley. *Pape*, 2009 WL

3151200, at **7-11.  Under the circumstances presented, it is not necessary to revisit Judge

Karas' decision.  Plaintiffs here do not argue that there has been a change in the controlling law,

that additional evidence is now available or that there is a need to correct a clear error or prevent

a manifest injustice.  *See* Def.'s Reply Mem. 3-4.  Accordingly, Plaintiffs' apparent attempt to

re-litigate claims arising prior to October 12, 2004 is denied.

### c.  **Plaintiffs' Claims of Discrimination Post-October 12, 2004**

As previously discussed, the claims remaining after Judge Karas' opinions, and at issue

in the instant motion for summary judgment, are Plaintiffs' claims under Section 504, the ADA,

and the Due Process Clause occurring after October 12, 2004.

### i.  **Due Process Claim**

In his ruling of September 29, 2009, Judge Karas held that Plaintiffs' surviving due

process claims were those arising out of the District's alleged failure to implement the 2004 IHO

Order, and provide Riley with Transitional Services, and any due process violations subsequent

18

to the 2004 IHO Order.  *Id.* at \*\*11, 16.  Plaintiffs now appear to allege that the District violated

their procedural due process rights by (1) disregarding the IHO's order to "immediately

reconvene the CSE and create a plan for [Riley's] transition services," *see* 2004 IHO Order at 14,

and (2) "refusing to comply" with the 2004 IHO Order directing the District to provide Riley

with a psychiatric evaluation, psychological counseling services, transitional services, vocational

assessments.  Pls.' Opp. Mem. 1-2, 6.

As an initial matter, the Court notes that the 2004 IHO Order did not direct the District to

provide Riley with counseling, a psychiatric evaluation, a vocational assessment, and job and

college options; rather, it merely stated that that if Riley attended the CSE meeting, the team

should "thoughtfully consider" the need to provide him with such services.  2004 IHO Order at

14.  Accordingly, the only issue properly before this Court is whether the District violated

Plaintiffs' procedural due process rights by disregarding the IHO's order to "immediately

convene" the CSE to create a plan for Riley's Transitional Services.

"When protected liberty interests like public education," are at issue, "the government

may deprive one of that interest so long as the process afforded provides minimal constitutional

procedural protections."  *A.M. ex rel. J.M. v. N.Y.C. Dep't of Educ.*, 840 F. Supp. 2d 660, 689

(E.D.N.Y. 2012), *aff'd sub nom. Moody ex rel. J.M. v. N.Y.C. Dep't of Educ.*, 12 Civ. 385, 2013

WL 906110 (2d Cir. Mar. 12, 2013) (citing *Goss v. Lopez,* 419 U.S. 565, 574 (1975) and quoting

*Wenger v. Canastota Cent. Sch. Dist.,* 979 F. Supp. 147, 153 (N.D.N.Y. 1997), *aff'd,* 208 F.3d

204 (2d Cir. 2000) (citing *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976)) (internal quotation

marks omitted)).

Here, it is undisputed that sixth months after the October 12, 2004 IHO Order, on April

18, 2005, the District convened a CSE to discuss the issues implicated by the 2004 IHO Order.

The CSE discussed the provision of Transitional Services and also recommended psychiatric and vocational evaluations to assist with Riley's transition to college.  Plaintiffs further concede that Riley underwent a psychiatric evaluation, at the request of the District, and met with VESID at some point after October 12, 2004.  When Riley went to VESID, he was informed that he did not qualify for their services because his Parents exceeded the organization's income requirements; however, he could not recall VESID's income threshold.  Pls.' Resp. 56.1 ¶¶ 69, 71; Nancy Tr. 25.  Riley also admits that he did not contact the District to inform them that VESID could not provide him with services, and neither he nor his mother can recall if anyone ever contacted the District.  Riley Tr. 60; Nancy Tr. 26; *see infra* note 5.

Plaintiffs fail to provide any evidence in support of their claim that the District's failure to convene the CSE "immediately" deprived them of procedural due process and also fail to rely upon any legal authority for such proposition.  *See* Pls.' Opp. Mem. 5-6, 10.  Despite Plaintiffs' failure to provide any support for this claim, the Court had conducted a thorough review of the evidence submitted by the parties, including the entirety of the deposition transcripts of Riley, Nancy and William Pape.  The Court finds no evidence that Plaintiffs were deprived of their procedural due process rights by the District's failure to convene a CSE meeting before April 18, 2005.  *See A.M. ex rel. J.M.*, 840 F. Supp. 2d at 689-90 (finding that due process rights of student with diabetes mellitus were not violated when the student and his parent were afforded a due process hearing to challenge alleged deprivations of educational benefits, and despite alleged defects in proceedings, IHO made every effort to assist parent in framing and clarifying her questions, allowed wide-ranging examination of numerous witnesses, and ensured that the hearing conformed to appropriate procedural safeguards); *Wenger,* 979 F. Supp. at 153 (finding that plaintiffs were afforded due process when the district convened CSE meetings and held

20

impartial hearings at the plaintiffs' request).  Because Plaintiffs were provided "with more than

sufficient procedural due process," *A.M. ex rel. J.M.*, 840 F. Supp. 2d at 690, the District's

motion for summary judgment on Plaintiffs' due process claim is GRANTED.

### ii.  Section 504 and ADA Claims

Plaintiffs bring two claims pursuant to both Section 504 and the ADA.  They allege that

the District (1) failed to provide reasonable accommodations and benefits for Riley's disability

and shifted the burden of providing required services to Plaintiffs, SAC ¶¶ 23, 40-41; and (2)

failed to immediately convene a CSE after the 2004 IHO Order in retaliation for Plaintiffs

initiating impartial due process hearings.  Pls.' Opp. Mem. 2, 6.

### 1.  Discrimination Claim

Section 504 and the IDEA are complementary, placing parallel requirements on schools

to provide special education and related services, *R.B. ex rel. L.B. v. Bd. of Educ. of City of New*

*York*, 99 F. Supp. 2d 411, 419 (S.D.N.Y. 2000) (citing 34 C.F.R. §§ 104.33–104.37), but they

apply to different injuries and therefore require different proof.  *Gabel ex rel. L.G. v. Bd. of*

*Educ. of Hyde Park Cent. Sch. Dist.*, 368 F. Supp. 2d 313, 333 (S.D.N.Y. 2005).  Unlike the

IDEA, Section 504 offers relief from discrimination.  *Id.* (citing *Wenger,* 979 F.Supp. at 152).

Section 504 prohibits an entity that receives federal financial assistance, like a school

district, from discriminating against a student solely on the basis of a disability:

> No otherwise qualified individual with a disability . . . shall, solely by reason of
> her or his disability, be excluded from the participation in, be denied the benefits
> of, or be subjected to discrimination under any program or activity receiving
> Federal financial assistance.

29 U.S.C. § 794(a).

To recover under Section 504, there must be evidence that:  (1) the student is disabled;

(2) the student is otherwise qualified to participate in school activities; (3) the school or the board receives federal financial assistance; and (4) the student was excluded from participation in programs at, denied the benefits of, or subject to discrimination at, the school on the basis of her disability. *Schreiber v. E. Ramapo Cent. Sch. Dist.*, 700 F. Supp. 2d 529, 564 (S.D.N.Y. 2010) (citations omitted).

"Section 504 relief is conditioned on a showing of discrimination, [and] requires something more than proof of a mere violation of IDEA—i.e., more than a faulty IEP." *Gabel,* 368 F. Supp. 2d at 334. The plaintiff "must put forth evidence that []he was denied a federal benefit *because* of his disability." *Schreiber*, 700 F. Supp. 2d at 564 (quoting *Pinn ex rel. Steven P. v. Harrison Cent. Sch. Dist.*, 473 F. Supp. 2d 477, 484 (S.D.N.Y. 2007)) (emphasis in original and internal quotation marks omitted). Additionally, there must be evidence that the school district acted with "deliberate or reckless indifference to the student's federally protected rights" or with "bad faith or gross misjudgment." *Id.* (citing *Bartlett v. N.Y. State Bd. of Law Examiners,* 156 F.3d 321, 331 (2d Cir. 1998) (noting that intentional discrimination under Section 504 may be inferred from "at least deliberate indifference to the strong likelihood that a violation of federally protected rights will" occur), *vacated on other grounds,* 527 U.S. 1031 (1999); *Pinn,* 473 F. Supp. 2d at 483 ("Where a plaintiff asserts denial of a free appropriate public education . . . , plaintiff must demonstrate bad faith or gross misjudgment."); and *Gabel,* 368 F. Supp. 2d at 334 (noting that a Section 504 claim may be brought if "a school district acts with gross negligence or reckless indifference in depriving a child of access to a FAPE")). Furthermore, since intentional discrimination can be inferred when a school district acts with gross negligence or reckless indifference in depriving a student of access to a FAPE, a plaintiff "is not required to show personal animosity or ill will." *Gabel,* 368 F. Supp. 2d at 334 (citations omitted).

Like Section 504, the ADA also prohibits discrimination based on disability.  The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  There are no specific ADA regulations which address the education of children with disabilities; "[h]owever, the ADA has been interpreted co-extensively with Section 504 special education requirements."  *R.B. ex rel. L.B.*, 99 F. Supp. 2d at 419 (citing 28 C.F.R. § 35.103(a) (the ADA "shall not be construed to apply a lesser standard than the standards applied under title V of the Rehabilitation Act of 1973."));  *Hargrave v. Vermont,* 340 F.3d 27, 35 (2d Cir. 2003) (discussing that the requirements of the ADA "apply with equal force to discrimination claims brought under the Rehabilitation Act.").

Plaintiffs here allege that the District discriminated against Riley on the basis of his disability by denying him reasonable accommodations and benefits, Pls.' Opp. Mem. 1; SAC ¶ 23, and "shift[ing] the burden" of paying for such services to Plaintiffs.  SAC ¶¶ 40-41.  As previously discussed, the 2004 IHO Order *did not* require the provision of psychiatric evaluation, psychological and vocational counseling services and transitional services; it only stated that the CSE should give "thoughtful consideration" to whether these services should be provided.  2004 IHO Order at 14.  Six months after the 2004 IHO Order, the District convened a CSE, arranged for Transitional Services through VESID, and recommended psychiatric and vocational evaluations.  2004-05 IEP at 3; Pls.' Resp. 56.1 ¶ 20.  At some point after the 2004 IHO Order, Riley underwent a psychiatric evaluation at the request of the District and visited VESID, where he was told that he was not entitled to Transitional Services through VESID.  William Tr. 28-29; Riley Tr. 53-60; Arai Decl., Ex. 6.  Accordingly, Riley did not receive Transitional Services.

23

However, the record contains no evidence that Plaintiffs ever notified the District that VESID
could not assist Riley.  Riley Tr. 60; Nancy Tr. 25-26; Pls.' Resp. 56.1 ¶¶ 69, 71; *see infra* note
5.

More to the point, Plaintiffs have not put forth any evidence whatsoever that supports
their allegation that Riley was denied Transitional Services *because* of his disability.  *Schreiber,*
700 F. Supp. 2d at 564 (citing *Pinn,* 473 F. Supp. 2d at 484 (granting defendant's summary
judgment motion when plaintiffs failed to put forth any evidence that their child "was denied a
federal benefit *because* of his disability" (emphasis in original)); *see also* Def.'s Reply Mem. 5.
Nor have Plaintiffs alleged any conduct from which a fact finder could infer that the District
acted with deliberate or reckless indifference or with gross negligence in failing to provide Riley
with Transitional Services.  *See C.L. v. Scarsdale Union Free Sch. Dist.*, 10 Civ. 4315 (CS),
2012 WL 983371, at *15 (S.D.N.Y. Mar. 22, 2012) (in dismissing a Section 504 claim on
summary judgment, the court noted that "[t]he fact that [the District] made an inappropriate
decision regarding an IEP for [the student] does not itself mean that [the District] acted in bad
faith or with gross misjudgment," citing *S.W. by J.W. v. Warren*, 528 F. Supp. 2d 282, 289
(S.D.N.Y. 2007) ("[S]omething more than a mere violation of the IDEA is necessary in order to
show a violation of Section 504.")); *Freydel v. New York Hosp.,* 242 F.3d 365, 2000 WL
1836755, at *3 (2d Cir. 2000) (finding no violation even where plaintiff "was *clearly denied* the
interpreter services she *required* and *was entitled to* under the law" because she "failed to present
sufficient evidence to persuade a reasonable jury that [the defendant] acted with deliberate
indifference to the likelihood of such a violation.") (emphasis added); *Pinn,* 473 F. Supp. 2d at
484 (granting defendants' summary judgment motion regarding plaintiffs' Section 504 claims
when, even if the court agreed that the school district failed to provide a FAPE, plaintiffs had

24

"put forth insufficient evidence of bad faith or gross misjudgment on the part of the [district]");
*cf. Gabel,* 368 F. Supp. 2d at 336 (finding that the school district acted with reckless indifference
when "it actually avoided dealing with [student's] parents because it had no proper placement
for" the child (emphasis omitted)); *R.B. ex rel. L.B.,* 99 F. Supp. 2d at at 419 (denying motion to
dismiss when the IHO found that the school district exhibited "gross neglect" by causing the
student to be excluded from school for an entire school year).

With respect to Plaintiffs' claim that the District shifted the burden of providing services
for Riley, they have not provided any evidence to support their claim. As noted above, Riley did
not contact the District to inform them of VESID's rejection, and, furthermore, there is no
evidence that the District shifted the burden of providing services *because* of Riley's disability.
Accordingly, the District's motion for summary judgment dismissing Plaintiffs' Section 504 and
ADA discrimination claims is GRANTED.

### 2. Retaliation Claim

Relatedly, Plaintiffs claim that the District failed to "immediately convene" a CSE after
the October 12, 2004 IHO Order in retaliation for their alleged history of requesting due process
hearings relating to the District's refusal to address Riley's emotional issues and the District's
losing two administrative due process hearings to Plaintiffs. SAC ¶¶ 18, 20; Pls.' Opp. Mem. 2,
10.

To state a claim for retaliation under Section 504 or the ADA, a plaintiff must establish
that: "(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that
plaintiff was involved in protected activity; (iii) an adverse decision or course of action was
taken against plaintiff; and (iv) a causal connection exists between the protected activity and the
adverse action." *Weixel v. Bd. of Educ. of City of New York,* 287 F.3d 138, 148 (2d Cir. 2002)

25

(citation and internal quotation marks omitted).  The term "protected activity" refers to an

"action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores,*

*Inc.,* 202 F.3d 560, 566 (2d Cir. 2000), *superseded by regulation, Mihalik v. Credit Agricole*

*Cheuvreux N. Am., Inc.,* 715 F.3d 102 (2d Cir. 2013)).  "In order to constitute protected activity,

a plaintiff's complaint must be sufficiently pointed to be reasonably understood as a complaint of

discrimination." *Goonewardena v. N. Shore Long Island Jewish Health Sys.,* 11 Civ. 2456

(MKB), 2013 WL 1211496, at *9 (E.D.N.Y. Mar. 25, 2013) (citation and internal quotation

marks omitted).

       In support of their retaliation claim, Plaintiffs provide no evidence, other than their own

conclusions or speculative beliefs that they were discriminated against.  *See infra* Section I(d);

Def.'s Mem. 7-8.  For example, when asked why he assumed that the District had a

discriminatory mindset against him, Riley replied, "[T]hey didn't give me what I needed so there

has to be a reason."  Pls.' Resp. 56.1 ¶ 99; Riley Tr. 114.  Similarly, Riley's mother testified that

she based her allegation of retaliation on her "intuitions," Nancy Tr. 51, 68; Pls.' Resp. 56.1 ¶ 87,

and Riley's father testified that the District hated allegedly losing the due process hearings

simply "[b]ecause [he] said so."  William Tr. 44.  Accordingly, there is *no* proof to "show that

the allegedly adverse actions occurred in circumstances from which a reasonable jury could infer

retaliatory intent."  *A.M. ex rel. J.M.,* 840 F. Supp. 2d at 687 (quoting *Treglia v. Town of*

*Manlius,* 313 F.3d 713, 720 (2d Cir. 2002)) (internal quotation marks omitted).  Seeking

reasonable accommodation of Riley's disability and prompt compliance with the IHO's request

constitutes protected activity under Section 504/ADA, *Weixel,* 287 F.3d at 149, and the Plaintiffs

do allege facts which demonstrate that the school was well aware of such an order by the IHO for

an immediate CSE meeting.  *Id.*  However, Plaintiffs present no evidence to demonstrate why

what seems like a reasonable delay in convening the CSE meeting could constitute an "adverse *decision* or course of action," *A.M. ex rel. J.M.*, 840 F. Supp. 2d at 687 (citing *Weixel*, 287 F.3d at 148) (emphasis added); Def.'s Reply Mem. 6, or even reckless indifference, as alleged by Plaintiffs.  Pls.' Opp. Mem. 6.  Plaintiffs here have failed to allege that they were the victims of retaliation.  Accordingly, the District's motion for summary judgment dismissing Plaintiffs' retaliation claims under Section 504 and the ADA is GRANTED.[9]

## III. Conclusion

For the reasons set forth above, Defendant's Motion for Summary Judgment is GRANTED.  The Clerk of the Court is respectfully directed to terminate the motion (Doc. 52) and to close this case.


SO ORDERED.

Dated:     July 28, 2013
           New York, New York


                                        _____
                                        Edgardo Ramos, U.S.D.J.

---

[9] Since the Court has dismissed Plaintiffs' Due Process, Section 504 and ADA claims, it declines to address the District's argument that the Parents lack standing to maintain claims individually and on behalf of Riley.  Def.'s Mem. 10-13.